**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jose MEDINA–ARELLANO, Defendant-Appellant.**

**No. 76–2818.**

United States Court of Appeals, Fifth Circuit.

March 13, 1978.

---

Irwin G. Lichter (court-appointed), Miami, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Miami, Fla., C. Wesley G. Currier, Hugh F. Culverhouse, Jr., Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before WISDOM and GEE, Circuit Judges, and VAN PELT *, District Judge.

WISDOM, Circuit Judge:

Jose Medina-Arellano appeals from judgments entered against him on verdicts finding him guilty of conspiracy to import cocaine and conspiracy to possess cocaine with the intent to distribute it. Medina assigns three points of error. First, he points out that the indictment in this case was returned nearly four years after the occurrence of the alleged offenses. He contends that this delay violated his fifth amendment right to due process of law, because it caused him to forget a possible alibi defense. Second, Medina contends that the trial court's refusal to grant a continuance before or during trial deprived his attorney of sufficient time to prepare his defense, thereby depriving him of effective assistance of counsel guaranteed by the sixth amendment. Third, Medina assigns as error the refusal of the trial court to grant a mistrial when the government's chief witness stated that he had pleaded guilty to a charge of conspiracy to distribute cocaine. Medina contends that the trial court's curative instruction about the guilty plea was inadequate.

We find no merit in any of Medina's contentions, and affirm the judgment of the district court.

---

* Senior District Judge of the District of Nebraska, sitting by designation.

## I.

The indictment against Medina charged that he and fifteen other named defendants conspired to import cocaine into the United States and to possess cocaine with the intent to distribute it.[1] Seven of these defendants were tried along with Medina. The indictment also named six unindicted coconspirators.

The indictment charged that Medina participated in the drug conspiracies from March 28, 1972, to August 30, 1972. The government based its case largely on the testimony of an unindicted coconspirator, Jorge Ramos, a paid government informant. Ramos had been involved in several trials and grand jury proceedings in various jurisdictions from the time he became an informant, 1972, until the time of trial in this case, April and May of 1976.

Medina was indicted on narcotics charges on February 19, 1976. He was arraigned on April 9, 1976. The trial court appointed Irwin G. Lichter of Miami to represent Medina. Lichter was informed of his appointment on April 12, 1976. On April 12 or 13, the trial court set April 26, 1976, as the trial date for Medina.

Lichter's records reflect that he received notice of the trial date by April 21. On that date, Lichter moved for a continuance on the ground that he had two other trials pending in federal court. By the time of trial, however, the conflicts had disappeared. The motion for a continuance was denied. At trial, Lichter stated that he had been physically unable to complete his reading of the six-inch stack of discovery material available to him. Lichter renewed his motion for a continuance at various times during the eight-day trial, but these motions, too, were unsuccessful.

At trial, Ramos testified that while in Haiti he had seen Medina place large amounts of cocaine in plastic bags. Ramos testified that Medina brought him four kilograms of cocaine on one occasion and six kilograms on another occasion, and that he paid Medina $10,000 for the cocaine. Medina did not take the stand, and Ramos's statements of Medina's involvement were never contradicted.

On direct examination, Ramos testified that he had pleaded guilty to conspiracy to possess cocaine. The defendants' attorneys objected, and moved for a mistrial. They argued that this testimony was prejudicial because the jury could infer that Ramos had pleaded guilty to *this* conspiracy to possess cocaine. The trial judge, however, instructed the jury that "Mr. Ramos was found guilty of a crime several years ago" and that "[w]hat he did in his case" was irrelevant to their deliberations in the case at trial.

## II.

■ We find that the four-year delay in this case between the crime alleged and arraignment did not violate the fifth amendment due process clause. Delay before indictment or arraignment involves the fifth amendment's due process guarantee rather than the sixth amendment's speedy trial provision. *United States v. Marion*, 1971, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468. *See United States v. Ewell*, 1966, 383 U.S. 116, 122, 86 S.Ct. 773, 15 L.Ed.2d 627.

■ Generally, before a conviction may be reversed for preindictment delay, the defendant must show that he has been prejudiced. *United States v. Lovasco*, 1977, 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752.[2] This Court "has consistently held that speculative allegations, such as general

1. A conspiracy to import cocaine violates 21 U.S.C. §§ 952 & 963. Possession of cocaine with the intent to distribute it violates 21 U.S.C. §§ 841 & 846. Medina was also indicted for importing cocaine in violation of 21 U.S.C. § 952, but the importation charge was dismissed by the trial court.

2. The Supreme Court in *Lovasco* implicitly left open the question whether a showing of tacti-

cal delay by the government without actual prejudice to the defendant could require reversal. The Court said that a defendant "generally" must show prejudice. 431 U.S. at 790, 97 S.Ct. 2044. *See United States v. Brand*, 5 Cir. 1977, 556 F.2d 1312, 1317 n.7. *See also United States v. Avalos*, 5 Cir. 1976, 541 F.2d 1100, 1107.

allegations of loss of witnesses and failure of memories, are insufficient to establish the requisite actual prejudice". *United States v. Avalos*, 5 Cir. 1976, 541 F.2d 1100, 1108. *See United States v. McGough*, 5 Cir. 1975, 510 F.2d 598, 604; *United States v. Zane*, 5 Cir. 1973, 489 F.2d 269, 270. Even if a defendant has been "somewhat prejudiced by the lapse of time", the due process clause does not always require reversal of his conviction if there has been a valid purpose for the delay. *United States v. Lovasco*, 431 U.S. at 796, 97 S.Ct. at 2044.

In each case, the prejudice to the defendant is to be weighed against the validity of the government's reason for delay. This balancing is to determine if it would be "fundamentally unfair" to compel the defendant to stand trial. *United States v. Lovasco*, 431 U.S. at 796, 97 S.Ct. 2044. *See also United States v. Brand*, 5 Cir. 1977, 556 F.2d 1312, 1317 n.7.

Medina's allegations of prejudice here could hardly be more speculative. He contends that the government's delay totally deprived him of "a possible alibi defense". This speculative contention is entitled to little weight in the due process analysis. *See United States v. Avalos*, 5 Cir. 1976, 541 F.2d 1100, 1108, which also involved a four-year delay, and in which "[t]he appellants . . . alleged only in the most ·general and conclusory fashion that the government's delay resulted in faded memories and a loss of potential defense witnesses."

The government has an explanation for its delay in indicting Medina. It was using its chief witness, Jorge Ramos, in four separate narcotics prosecutions in the Southern District of New York from late 1972 until 1975. Medina's bare allegation of improper tactical purpose on the government's part is insufficient to establish a malevolent purpose. *United States v. Mari-*

on, 1971, 404 U.S. 307, 324–25, 92 S.Ct. 455, 30 L.Ed.2d 468, 481. *See United States v. Avalos*, 5 Cir. 1976, 541 F.2d 1100, 1108; *United States v. Butts*, 5 Cir. 1975, 524 F.2d 975, 977 & n.2; *United States v. DiNapoli*, 2 Cir. 1977, 557 F.2d 962, 966. The government's reason for delay is not the most compelling. *Cf.* Amsterdam, *Speedy Criminal Trial: Rights and Remedies*, 27 Stanford L.Rev. 525, 526–27 (1975). The government might well have been able to spare Ramos from the New York prosecutions for the time needed to seek indictments against Medina and the others involved in this proceeding. Nevertheless, this Court has recognized that "the necessity of allocating prosecutorial resources" may cause delays valid under the *Lovasco* analysis. *United States v. Shaw*, 5 Cir. 1977, 555 F.2d 1295, 1299.

Given Medina's inability to show prejudice we hold that compelling him to stand trial, after the delay that occurred, was not fundamentally unfair and did not violate due process.

### III.

Generally, "[a] motion for a continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless there was a showing that there has been an abuse of that discretion." *United States v. Uptain*, 5 Cir. 1976, 531 F.2d 1281, 1285. *See, e. g., Avery v. Alabama*, 1940, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377; *United States v. Gidley*, 5 Cir. 1976, 527 F.2d 1345; *United States v. Gates*, 5 Cir. 1977, 557 F.2d 1086, 1088. Medina contends that the trial court's denial of a continuance violated his sixth amendment right to the effective assistance of counsel, because his lawyer had inadequate time to examine effectively the discovery material provided by the government.[3]

---

3. Medina also alleges that had the continuance been granted he could have located unnamed "witnesses for his defense particularly a possible alibi defense". Such a bare allegation that witnesses could have been found is insufficient to cause reversal of a denial of a motion for continuance. *United States v. Avalos*, 5 Cir. 1976, 541 F.2d 1100, 1117–18; *United States v. Uptain*, 5 Cir. 1976, 531 F.2d 1281, 1287. *United States v. Gidley*, 5 Cir. 1976, 527 F.2d 1345, 1349 & n. 2. "A movant must show . . . that substantial favorable testimony would be

Since the trial, Medina's attorney has examined the government's discovery material and has identified material that allegedly would have helped Medina's case. Our consideration of this point, therefore, is aided by hindsight.

■ Usually, the issue of proper or improper denial of a continuance "must be decided . . . in light of the circumstances presented, particularly the reasons for continuance presented to the trial court at the time the request is denied". *United States v. Uptain,* 5 Cir. 1976, 531 F.2d 1281, 1285–86. *See Ungar v. Sarafite,* 1964, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921; *McKinney v. Wainwright,* 5 Cir. 1974, 488 F.2d 28, *cert. denied,* 416 U.S. 973, 94 S.Ct. 1998, 40 L.Ed.2d 562. This rule obtains because the denial of the continuance often prevents the appellate court from knowing what facts would have come to light at trial had the continuance been granted. For example, when a continuance to subpoena witnesses is denied, the appellate court cannot know, usually, whether the witness could have been located within a reasonable time, or, often, what the substance of his testimony would have been. *See United States v. Gidley,* 5 Cir. 1976, 527 F.2d 1345; *United States v. Pollack,* 5 Cir. 1970, 427 F.2d 1168. Similarly, when a defendant is denied a continuance to obtain another lawyer, or to await the recuperation of an ill member of a defense team, it is difficult for an appellate court to determine what would have happened had the continuance been granted. *See United States v. Uptain,* 5 Cir. 1976, 531 F.2d 1281, 1286; *United States v. Dilworth,* 5 Cir. 1975, 524 F.2d 470; *United States v. Gray,* 5 Cir. 1978, No. 77–5164, 565 F.2d 881, 888–889.

■ The appellate court, therefore, examining the denial of a continuance usually considers whether the trial judge acted within his discretion—knowing what he knew at the time of his denial. An analysis of what would have happened is usually impossible.

■ A different situation arises when, as here, the request for a continuance is made to examine discovery material. Then, the appellate court can learn and analyze the facts that could have been presented at trial. *See United States v. Owen,* 5 Cir. 1974, 492 F.2d 1100, 1110. In this kind of case, we must examine the trial court's denial of a continuance in light of what an examination of the discovery material reveals to defense counsel after the trial.

■ The question here is not whether the trial judge abused his discretion in denying the continuance. We need not examine all the factors that go to that question.[4]

---

tendered by the witness, that the witness is available and willing to testify, and that the denial of a continuance would materially prejudice the defendant." *United States v. Uptain,* 531 F.2d at 1287, *quoting United States v. Miller,* 5 Cir. 1975, 513 F.2d 791, 793.

4. Among the factors that are relevant in assessing a claim of inadequate preparation time under the abuse of discretion test are the following:

the quantum of time available for preparation, the likelihood of prejudice from denial, the accused's role in shortening the effective preparation time, the degree of complexity of the case, and the availability of discovery from the prosecution. We have also explicitly considered the adequacy of the defense actually provided at trial, the skill and experience of the attorney, any pre-appointment or pre-retention experience of the attorney with the accused or the alleged crime, and any representation of the defendant by other attorneys that accrues to his benefit. (Footnotes omitted.)

*United States v. Uptain,* 5 Cir. 1976, 531 F.2d 1281, 1286–87.

Were we to make an abuse of discretion analysis here, we would reach the same result. *See United States v. Walker,* 5 Cir. 1977, 559 F.2d 365, 370. The various factors must be viewed together. Where two days between employment of the attorney and trial are sufficient in one case, that amount of time is insufficient in another. *Compare United States v. Long,* 5 Cir. 1969, 419 F.2d 91, *with United States v. Millican,* 5 Cir. 1969, 414 F.2d 811. Here, Medina's attorney was informed of his appointment two weeks before trial. He was formally notified of the trial date five days in advance. It is standard procedure in the Southern District of Florida to schedule trials two weeks after arraignment.

The trial court did not abuse its discretion in requiring Medina's attorney to inspect approximately six inches of discovery material in such a period of time. Although seven other people

When counsel sought the continuance because he had not adequately examined discovery material, we can focus on the one crucial factor—prejudice to the defendant. To affirm a conviction we must find that additional time to examine the discovery material would not have affected the outcome.[5] *See United States v. Uptain,* 5 Cir. 1976, 531 F.2d 1281, 1289.

We have examined the additional information that the defense has gleaned from the discovery material since trial. This examination convinces us that this additional information would not have changed the jury's verdict.

At oral argument, defense counsel revealed two items of discovery information that he had not time adequately to examine before trial. First, the discovery material included a letter written by Jorge Ramos, the informant who was the government's chief witness. That letter, to a government agent, included the following language: "Jose Medina goes on trial this week for pot. Bill and Sam [other government agents] are hoping he will sing after he gets a few more years."

Medina contends that this letter reveals a government plot to prosecute Medina not to punish him for misdeeds, but to make him talk. The defense contends that if the jury had known of this letter, it could have found Medina not guilty.

This argument does not persuade us. The letter does not exculpate Medina. On the contrary, if the jury had learned the defense theory that Medina was concealing information about illegal drug activities from the government, it might have been more likely rather than less likely to convict him of a drug conspiracy. Even if the jury believed that the government hoped that Medina would talk, that belief has no bearing on the question of guilt or innocence. In any event, the letter is not exculpatory: it contains nothing to cast doubt on the jury's finding of guilt.

The second point is that the defendant's lawyer did not have time adequately to inspect a hotel registration card. This card, allegedly, demonstrated that Medina was in the Caribbean on one occasion when Ramos said that Medina had sold drugs to him. Defense counsel pointed out to the jury that the face of the card showed that Medina had checked out of the hotel before the date of the alleged transaction. The prosecutor in his argument, however, showed the jury that an extension of Medina's stay had been recorded on the back of the card.

Even if more time could have enabled Medina's lawyer to find the writing on the back of the registration card, and even if the jury members just possibly may

were tried along with Medina, the case against Medina was not complex. And we must examine the complexity of the case as it relates to Medina rather than of the case as a whole. *United States v. Uptain,* 5 Cir. 1976, 531 F.2d 1281, 1289 n. 18. The case against Medina was based almost entirely on the testimony of Jorge Ramos.

For the case as a whole, each of the defendants had the same overall goal: to discredit the testimony of Jorge Ramos. The efforts of the lawyers for all the other defendants accrued to Medina. Knowing what he knew at the time, the trial judge certainly acted correctly in denying Medina's motion for a continuance. To continue the trial would have created scheduling difficulties for the court, the defendants, and the attorneys. This factor must be considered also. *United States v. Gray,* 5 Cir. 1978, No. 77–5164, 565 F.2d 881, 889.

Furthermore, Medina's attorney was able to file twelve motions other than the motions to continue the trial. Most of these motions were

considered favorably by the trial court. This factor tends to show that there was adequate time to prepare Medina's defense. *See United States v. Uptain,* 531 F.2d at 1289. Our review of the record has convinced us that Medina's lawyer conducted the defense skillfully.

The trial judge did not abuse his discretion in denying the continuance to Medina.

5. The defense contends that *Gravitt v. United States,* 5 Cir. 1975, 523 F.2d 1211, requires us to remand this case for an evidentiary hearing on actual prejudice. In *Gravitt,* a sixth amendment post-indictment delay case, the defendant was held in jail in lieu of bail pending trial. This type of treatment, as well as the anxiety that accompanies public accusation, makes prejudice much more likely than in the fifth amendment pre-indictment delay situation. No hearing is necessary in this case, because the defendant suffered no prejudice from the delay. *See United States v. Avalos,* 5 Cir. 1976, 541 F.2d 1100, 1107.

have inferred that defense counsel was trying to trick them,[6] the case against Medina remains as convincing as it was without this discovery. The information on the card that was untimely learned did not exculpate Medina; it inculpated him.

There remains Ramos's uncontradicted testimony, summarized in Part I, that Medina sold him ten kilograms of cocaine for $10,000. The hotel registration card, the government's only physical evidence against Medina, corroborated Ramos's testimony.

■ Given the strength of the government's case, we find that the defense attorney's lack of knowledge of the discovery material at trial was harmless beyond a reasonable doubt. See United States v. Uptain, 5 Cir. 1976, 531 F.2d 1281, 1289. Our decision is made easier because the material that the defense found, although possibly helpful to its presentation, did not tend to show that Medina was innocent.

### IV.

Medina's last contention is that the trial court erred in denying his motion for a mistrial after Ramos, the government's chief witness, stated on direct examination that he had pleaded guilty to a felony drug conspiracy. This contention is without merit.

■ In this case none of the prejudice that accrues from mention of a coconspirator's guilty plea was present. In the instant case, the trial judge told the jury: "I want you to be very careful . . . that you not let the occurrence that Mr. Ramos was found guilty of a crime several years ago have any effect or bearing upon your evaluation of the evidence or your deliberations. What he did in his case is something that is not to affect your consideration or your deliberations in this case." A guilty plea by a coconspirator can be prejudicial if the jury learns that the witness pleaded guilty to the very conspiracy with which the defendant is charged. See, e. g., United States v. King, 5 Cir. 1974, 505 F.2d 602, 606; United States v. Davis, 5 Cir. 1973, 487 F.2d 112, 120, cert. denied, 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878; United States v. Harrell, 5 Cir. 1970, 436 F.2d 606, 614; United States v. Baete, 5 Cir. 1969, 414 F.2d 782. In Harrell, the jury learned of the guilty plea of a codefendant, Norris, to the very conspiracy charged against the defendant Harrell. We found error, and said:

> Nothing was said to dispel the predictably certain reasoning a juror could be expected to indulge in: if Norris, as admitted, was guilty of conspiring with Harrell, how then could Harrell be other than guilty of conspiring with Norris? (Emphasis in original.)

436 F.2d at 614.

■ When, as in the instant case, the jury learns that a chief witness who was an unindicted coconspirator pleaded guilty to a conspiracy other than the one involved in the case it is deciding, generally a court finds that the defendant was not prejudiced. The jury does not learn that the government had a conspiracy case so strong that one of the accused pleaded guilty. Moreover, it cannot infer from this information anything prejudicial to the defense. The jury could infer from the plea to an earlier conspiracy only that the chief witness was the type of person who would conspire illegally if given the chance. Such an inference is not prejudicial to the defense. Here, the defense followed the usual[7] pattern for this kind of case; the government's chief witness was depicted as a bad person. Often he is, as everyone knows; the jury considers this possibility in determining his credibility. The defense here portrayed Ramos as a criminal drug user and dealer. It attempted to show that Ramos invented lies about the defendants in return for government leniency for his

---

6. It is also possible that the jury thought Medina's lawyer made an honest mistake.

7. See, e. g., United States v. Fleetwood, 5 Cir. 1976, 528 F.2d 528, 530; United States v. King, 5 Cir. 1974, 505 F.2d 602, 605–07; United States v. Davis, 5 Cir. 1973, 487 F.2d 112, 120, 126.

past crimes. *See, e. g.,* transcript at 293. Knowledge by the jury of a guilty plea to unrelated crimes did not hurt the defense's position. The government's purpose in bringing out Ramos's record was to pre-empt a defense attack on Ramos's credibility. *Cf. United States v. King,* 5 Cir. 1974, 505 F.2d 602, 605. Given this motive, the government has been allowed to bring out a coconspirator's guilty plea to the very crime of which the defendant stood accused. *United States v. King,* 5 Cir. 1974, 505 F.2d 602, 605–08.

Because we find no merit in any of Medina's assignments of error, we affirm the judgment of the district court.

AFFIRMED.