STATE of Wisconsin, Plaintiff-Respondent,

v.

Scott Allen DAVIS, Defendant-Appellant.†

Court of Appeals

No. 79–110–CR. *Submitted on briefs September 4, 1979.—Decided January 15, 1980.*
(Also reported in 288 N.W.2d 870.)

---

† Petition to review denied.

For the defendant-appellant the cause was submitted on the brief of *Patricia M. Heim* of La Crosse.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Kirbie Knutson,* assistant attorney general.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

BABLITCH, J.   This is an appeal from an order of the circuit court for La Crosse County denying the defendant's motion to dismiss a criminal complaint against him.  The complaint was issued on October 26, 1978, and alleges that the defendant sold one quarter of an ounce of cocaine for the sum of $595 to an agent of the Wisconsin Department of Justice, Division of Criminal Investigation, on March 6, 1978.  The defendant contends that the eight-month delay between the date of the alleged offense and the filing of the complaint violates his right to due process under the fifth amendment to the United States Constitution and under art. I, sec. 8 of the Wisconsin Constitution.

This court granted defendant's petition to appeal pursuant to sec. 808.03 (2), Stats.  The sole issue on appeal is whether the trial court erred in refusing to dismiss the complaint. *State v. Rogers,* 70 Wis.2d 160; 163, 233 N.W.2d 480 (1975).

The defendant contends that the delay in issuing the complaint was prejudicial because a witness material to his defense is presently unavailable and because the memory of the state undercover agent has dimmed with the passage of time. He also asserts that the delay was occasioned by the state's desire to gain a "tactical advantage" over the defendant.

At an evidentiary hearing held on November 8, 1978, the district attorney for La Crosse County testified that the defendant was initially arrested on March 29, 1978 and charged with being a party to the crime of possessing some eight ounces of cocaine, valued at approximately $15,000, with intent to deliver it on that date to the same undercover agent involved in this case. The arrest of the defendant and others was the result of a continuing investigation by the State Department of Justice. The district attorney indicated that although he became aware of the alleged March 6 delivery when he read the agent's investigative reports on March 29, he had initially decided not to prosecute the earlier act because he anticipated a conviction on the possession charge, which he viewed as a far more serious crime. He said he decided to prosecute the March 6 delivery only after the trial court granted a defense motion to suppress the physical evidence seized in the March 29 incident, rendering successful prosecution of the possession charge unlikely.[1]

The complaint was issued well within the six-year statute of limitations for felonies set forth in sec. 939.74(1), Stats. Such statutes are the "primary guarantee" against stale prosecutions. *United States v. Ewell*, 383 U.S. 116, 122 (1966) ; *State v. Rogers*, 70 Wis.2d at 164, 233 N.W. 2d at 482. Nonetheless, the supreme courts of Wisconsin and of the United States have recognized that statutes of limitation cannot be "the sole standard by which delay

---

[1] Defense counsel's brief informs us that the complaint for possession was dismissed against defendant and three codefendants in January, 1979, on the state's motion.

between the date of the alleged offense and arrest is measured when considering a denial of due process." *State v. Rogers,* 70 Wis.2d 160, 164, 233 N.W.2d 480, 482 (1975) ; *State v. McCarty,* 47 Wis.2d 781, 789, 177 N.W.2d 819, 824 (1970) ; *State v. Midell,* 40 Wis.2d 516, 521, 162 N.W.2d 54, 56 (1968) ; *United States v. Lovasco,* 431 U.S. 783, 789 (1977), *reh. den.* 434 U.S. 881 (1977).

In *Lovasco,* 431 U.S. at 789, the United States Supreme Court stated that the due process clause "has a limited role to play in protecting against oppressive delay." However, it rejected the defendant's argument that due process precludes prosecution whenever a defendant suffers actual prejudice arising out of preindictment delay. The court explained that actual prejudice may make a due process claim "concrete and ripe for adjudication," and is a necessary element of such a claim. 431 U.S. at 789–790. Nonetheless, it continued, a defendant must also prove that the government's delay in charging arose from an improper motive or purpose such as to gain an unfair " 'tactical advantage over the accused.' " (Quoting *United States v. Marion,* 404 U.S. 307, 324 (1971).) 431 U.S. at 795.

We agree with the state's contention that the defendant has failed to establish either actual prejudice or improper motive.

### PREJUDICE

The sole evidence that a material witness may be unavailable for trial is contained in affidavits signed by the defendant and the defendant's attorney. These allege in nearly identical language that the affiant "believes" that one John Facteau, who was the defendant's roommate on the date of the alleged delivery and was present during "certain conversations" with the undercover agent, moved to Florida at an unspecified date.

Both affidavits assert that the affiant "is uncertain of his whereabouts in Florida and has no means available to locate him in Florida," and that his testimony is crucial to the defense. Defense counsel's affidavit additionally alleges, on information and belief, that the witness would testify that the defendant did not "sell ¼ ounce of cocaine" to the agent on the date or at the place specified in the complaint.[2]

Neither affidavit sets forth any basis for the assertion that the witness is unavailable, the source of either affiant's belief that he has moved to Florida, nor what efforts were made, if any, to locate him.[3] No testimony or

[2] The allegations concerning the materiality of the witness' testimony are as follows:

4. That your affiant is informed and verily believes and thereon alleges that if said John Facteau was available to testify for the Defendant, his testimony would be as follows:

A. That said John Facteau was a friend of the Defendant and that on March 6, 1978, he was living with the Defendant at 521 Avon Street in La Crosse, Wisconsin;

B. That on said date and at such place, he was present with the Defendant;

C. Further, he would testify that on said date, the Defendant did not have any telephone conversation with state agent Joseph Burchik, Jr. nor did the Defendant sell ¼ ounce of cocaine to agent Burchik, Jr. on said date or at said place; further, that the Defendant never received the sum of $595.00 or any other sum from agent Burchik, Jr. on said date or at said place.

[3] It is a fair inference from the record that no significant measures to locate the witness were employed. The initial affidavits alleging his unavailability were dated October 30 and 31, 1978, less than a week after the defendant was charged, and prior to his bindover. The defendant renewed his motion before a different trial judge subsequent to bindover, and filed an affidavit dated November 29, 1978 which was substantially identical to those originally filed. All of the affidavits fail to allege diligent efforts to locate the witness which must be made by a defendant claiming prejudice from a witness' unavailability. *See Green v. State*, 555 S.W.2d 738 (Tex. Crim. 1977).

other evidence was presented at the evidentiary hearing to supplement the claim of unavailability. Under these circumstances, we think that the defendant's claim of prejudice from the delay in charging is at best premature. Self-serving assertions by a defendant based on mere speculation cannot serve as the grounds for a finding of actual prejudice. *United States v. Mays,* 549 F.2d 670, 679–80 (9th Cir. 1977). *Accord, United States v. Medina-Arellano,* 569 F.2d 349 (5th Cir. 1978).

The same speculative quality adheres to the assertion in defense counsel's affidavit concerning the alleged nature of the witness' testimony. The affidavit does not indicate who supplied the information upon which counsel formed the belief that the testimony would be helpful to the defendant, nor does it set forth any basis for evaluating the reliability of the information. In addition, to accept that belief as fact would necessarily require a conclusion that the agent gave false testimony at the preliminary hearing. At that time the agent stated that John Facteau was present during the entire transaction and implied that he participated in the delivery. If that is so, Facteau's testimony, if truthful, would be detrimental to the defendant rather than exculpatory. In any event, unsubstantiated claims on information and belief are inadequate to support a finding that his testimony would be material to the defense. *See United States v. Mays,* 549 F.2d at 680; *United States v. Sand,* 541 F.2d 1370, 1373 (9th Cir. 1976).

The defendant's assertion that the agent's memory of the transaction dimmed during the eight-month delay in issuing the complaint is based solely on the transcript of his testimony during the preliminary examination conducted on November 13, 1978. At that time the agent could not remember the exact details of a single telephone conversation with the defendant a short time prior to

the alleged delivery of cocaine on March 6, 1978, during which the two arranged to meet at the defendant's home. However, he testified in considerable and unfaltering detail as to the circumstances surrounding the delivery itself. He also testified that he had never met the defendant before the transaction and that the arrangements for the sale had been made by a third party prior to March 6. Consequently, the record belies the defendant's contention that he may have been prejudiced in the possible development of an entrapment defense by the agent's inability to demonstrate total recall of the telephone conversation.

## REASON FOR DELAY

We find no merit in the defendant's contention that the delay in filing the criminal complaint was motivated by the desire to gain an unfair advantage or by any other improper reason. The defendant correctly points out that the delay was not the "investigative delay" upheld in *United States v. Lovasco*, 431 U.S. at 796. In that case the court found an 18-month delay in charging, during which period two allegedly material defense witnesses died, was justified by the government's need to complete its investigation of the offenses. In this case the district attorney testified that no further investigation of the March 6 delivery took place after he reviewed the reports of the agent and of the state crime laboratory on or about March 29, 1978. In *Lovasco*, however, the Supreme Court expressly refused to "determine in the abstract the circumstances in which preaccusation delay would require dismissing prosecutions," 431 U.S. at 796, and strongly implied that a wide variety of noninvestigative reasons could be justifiable, despite actual prejudice to the defendant resulting from that delay. 431 U.S. at 796–97. It quoted with approval from an article by Professor An-

thony Amsterdam,[4] listing as one such noninvestigative reason the following:[5]

[I]f there is more than one possible charge against a suspect, some of them may be held back pending the disposition of others, in order to avoid the burden upon the prosecutor's office of handling charges that may turn out to be unnecessary to obtain the degree of punishment that the prosecutor seeks. 431 U.S. at 797, n. 19.

Other circumstances than those presented by this record might compel a different result. However, we cannot infer an improper motivation from the state's decision to suspend filing the instant charge until it became apparent that the prosecution of a more serious charge was doomed. The defendant's "bare allegation of improper tactical purpose on the government's part is insufficient to establish a malevolent purpose." *Medina-Arellano,* 569 F.2d at 353. There is no showing that the state deliberately withheld this charge so as to put the defendant at a disadvantage in preparing his defense, to harass him with successive prosecutions, or to punish him for exercising constitutionally protected rights.[6] The length of the delay in bringing it is far less than that upheld in many other Wisconsin and federal cases.[7] Actual

---

[4] Amsterdam, *Speedy Criminal Trial: Rights and Remedies,* 27 Stan. L. Rev. 525, 527–728 (1975).

[5] Professor Amsterdam distinguished legitimate reasons for delays in prosecution from those motivated by a "sinister" wish to delay defense investigations or hold a "club" over the defendant's head. *Lovasco,* 431 U.S. at 797, n. 19.

[6] *See, e.g.,* dissenting opinion of Justices Fortas and Douglas in *United States v. Ewell,* 383 U.S. 116, 127–30 (1966).

[7] *See, e.g., United States v. Marion,* 404 U.S. 307 (38-month delay occasioned by understaffed office and other priorities of prosecutor; *United States v. Medina-Arellano,* 569 F.2d 349 (nearly a four-year delay while prosecution's chief witness was involved in other prosecutions); *United States v. Juarez,* 561 F.2d 65 (7th Cir. 1977) (20-month delay during continuing investiga-

and substantial prejudice to the defendant arising out of that delay has not been established. The trial court did not err in refusing to dismiss the complaint.

*By the Court.*—Order affirmed.

tion of other drug offenses by other persons); *United States v. La Tender,* 464 F. Supp. 607 (E.D. Wis. 1979) (20-month delay between original indictment which was dismissed on motion of government and renewed prosecution; *State v. Rogers,* 70 Wis.2d 160 (17-month delay while state prosecuted co-defendant and allowed defendant to serve out his term as district attorney); *State v. Midell,* 40 Wis.2d 516 (11-month delay during which defendant's whereabouts were apparently unknown).

† Petition to review denied.