STATE of Wisconsin, Plaintiff-Respondent,†

v.

David James WILSON, Defendant-Appellant.

Court of Appeals

*No. 87–0761–CR. Argued February 18, 1988—Decided May 4, 1988.*

(Also reported in 426 N.W.2d 56.)

† Petition to review granted.

On behalf of the defendant-appellant the cause was submitted on the briefs and oral argument of *Jed Stone* of *Law Offices of Jed Stone, Ltd.,* of Waukegan, Illinois.

On behalf of the plaintiff-respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general and *Jerome S. Schmidt,* assistant attorney general and *Richard Alan Ginkowski,* district attorney *pro tempore* of Kenosha, with oral argument by *Richard Alan Ginkowski.*

Before Brown, P.J., Nettesheim and Moser, JJ.

BROWN, P.J. David Wilson appeals a second-degree murder conviction resulting from the death of his stepson, Donald Miller. Because the trial court failed to instruct the jury on the lesser included offense of reckless homicide, we reverse and remand for a new trial.

Initially, we address Wilson's challenge to the sufficiency of the evidence. The basic circumstances surrounding Donald's death can be summarized as follows.

On January 7, 1969, the day preceding his death, Donald Miller remained home from school with Wilson. Other family members left for the day. Wilson,

although working on the family car, periodically checked on Donald and was with him throughout the day. Around noon, Wilson fed Donald a lunch of chicken soup with most of the noodles taken out. At approximately 3:30 p.m., Darlene Wilson, Donald's mother, returned to the home and found Donald to be very ill. She then took Donald to see his physician, Dr. Morris Siegel.

Dr. Siegel described Donald as being in a moribund state (near death) and very unresponsive with a poor pulse rate and shortness of breath. Dr. Siegel evaluated Donald's overall condition as life threatening and immediately took him to the hospital. At the hospital, it was determined that Donald was suffering from a ruptured hollow viscus (internal organ) in the abdomen, with fluid and peritonitis present. Abdominal surgery was performed that evening. During surgery, approximately 1200 cubic centimeters of mirky yellow fluid containing food particles drained from Donald's abdomen. Upon lifting Donald's stomach, the surgeons "found a rent [laceration] about three centimeters long in the upper end of the stomach." Dr. Siegel described the laceration as irregular, "because it's a blowout. It isn't like an incision with a knife." Although the laceration was sutured, Donald died the following morning.

Dr. Siegel, Donald's treating physician, and Drs. Robert Huntington and Mary Case, both forensic pathologists, testified as to what must have happened to cause Donald's ruptured stomach. Their testimony indicates that Donald's stomach ruptured due to a blunt force trauma. The force was considered "concentrated" in nature because it only affected a limited area without causing damage to surrounding tissue, such that "the liver and the spleen came off whole."

The force necessary to create the injury was categorized as "a good walloping," "very significant" and "a great deal." The degree of force necessary was likened to a significant fall from a second or third story window onto a picket fence.

Because of the lack of injury to surrounding tissue and the lack of other accompanying injuries which would normally result, the doctors agreed that the level of force necessary could not come from an ordinary fall such as that caused by routine child's play or a fall over the arm of a chair. Instead, the doctors testified that the rupture was the result of a blow such as a kick or punch from a foot, a knee, or fist striking with considerable force. Dr. Case stated that the force would compress the abdominal wall backwards, pushing the stomach up against the vertebral column.

Because there was no explanation of how this force was actually applied to Donald such as "a motor vehicle accident, ... being run over by a car, a fall out of a third story window, very serious injuries of which people are always aware," Dr. Case concluded that the injury was inflicted upon Donald and that his death was not accidental.

Dr. Huntington concurred, describing the injury as consistent with a finding of child abuse. He based his determination upon the injury itself and a pattern of past abuse. That pattern of abuse consisted of a variety of incidents: Donald suffered from five broken ribs with no explanation or history to show that they were treated. There were burns on Donald's fingers which were considered inadequately explained. Donald also had a bruise on his back and another on his scalp at the time of his death. When asked to explain a

bruise on his face, Donald stated that Wilson had bitten him.

Two of Donald's sisters testified that Donald was afraid of Wilson and that Wilson kicked Donald several times a week. Donald's sisters also reported that Wilson would take Donald into the bathroom at which time the sisters would hear scuffling, the hamper banging against the wall, water running, and Donald crying. Following these bathroom incidents, Wilson would tell Donald to smile and sometimes make Donald drink a glass of water with "steam or vapor or something rising from it." On one occasion, Donald's sister Joan testified that as she was in the bathroom brushing her teeth, Wilson brought Donald in to go to the bathroom. Donald could not go, she stated, so Wilson got mad, took the toilet seat and "slammed it down" on Donald's penis.

Wilson claims there is no evidence to show the nature of the conduct causing Donald's death; thus, there is no evidence to show that he engaged in conduct imminently dangerous to another and evincing a depraved mind regardless of human life. *See* Sec. 940.02, Stats. In short, there is no evidence that he was responsible for what occurred. He concludes that because the state failed to prove the specific act or conduct causing the injury, the jury could not reasonably determine Donald's death to have been the result of some criminal agency rather than a fall or other accident.

This court addressed a similar challenge in *State v. Johnson,* 135 Wis. 2d 453, 400 N.W.2d 502 (Ct. App. 1986). In *Johnson,* we recognized the necessity for extensive reliance on circumstantial evidence in prosecutions involving child victims. *Id.* at 457, 400

N.W.2d at 504. We concluded that the qualities of conduct necessary for a conviction can be inferred from the act itself *"and the circumstances of its commission." Id.* at 458, 400 N.W.2d at 504 (emphasis in original). The type, nature, extent, and degree of force required to produce the injuries which resulted from the conduct provide the type of circumstantial evidence upon which a second-degree murder conviction can be based. *See State v. Hooper,* 101 Wis. 2d 517, 542, 305 N.W.2d 110, 123 (1981). The testimony of medical experts as to what could not have happened or what must have happened to produce the injuries is crucial. *Johnson,* 135 Wis. 2d at 458, 400 N.W.2d at 504.

After considering the evidence as a whole, and especially the medical testimony and the evidence of child abuse, the jury could eliminate accident and misadventure as a reasonable hypothesis of innocence. *Johnson,* 135 Wis. 2d at 465, 400 N.W.2d at 507. The expert testimony concerning the level of force needed to cause the injury, coupled with the surrounding circumstances, arguably places such a theory beyond the realm of possibility. *Id.*

We also reject Wilson's argument that under *Seidler v. State,* 64 Wis. 2d 456, 219 N.W.2d 320 (1974), at most the evidence supports only a conviction for reckless homicide. As to criminal agency short of second-degree murder, we are satisfied that "the jury *could* have drawn the appropriate inferences from the evidence adduced at trial" concerning the nature of the injury and the pattern of abuse to properly find that Donald's death resulted from conduct evincing a

depraved mind. *Johnson,* 135 Wis. 2d at 465, 400 N.W.2d at 507 (emphasis in original).

■ Regarding Wilson's claim that the evidence failed to establish that he was responsible, we note the extensive testimony concerning a pattern of child abuse. That evidence functioned to establish Wilson's identity as the perpetrator of the crime. *See* sec. 904.04(2), Stats. In addition, the doctors testified that Donald's stomach would have been distended (enlarged from internal pressure such as a meal) at the time the rupture occurred. An empty stomach, Dr. Siegel testified, would not rupture.

Based on the evidence that Donald had consumed chicken soup at about noon, that food is passed through the stomach within a few hours and that Donald's abdomen was found to contain 1200 cubic centimeters of mirky, yellow fluid during surgery, the doctors concluded that Donald's stomach was ruptured within a few hours of the noon lunch, probably between 12:00 p.m. and 2:00 p.m. Wilson testified that he was with Donald "[b]asically" all day. During that day, Wilson was responsible for the care of Donald. The only reasonable inference that one could draw from this evidence is that the injuries were sustained through some conduct of Wilson's. *See State v. Hooper,* 101 Wis. 2d at 544, 305 N.W.2d at 123.

Wilson next argues that the trial court erred in failing to instruct the jury on the lesser included offense of homicide by reckless conduct, contrary to sec. 940.06, Stats. (1967). However, the statute of limitations had run on this lesser included offense. Therefore, the trial court declined to give the instruction.

152

In *State v. Muenter,* 138 Wis. 2d 374, 406 N.W.2d 415 (1987), a case decided after the trial of this case, the supreme court held that the running of the statute of limitations does not prohibit the trial court from instructing the jury on a lesser included offense nor preclude the jury from convicting the defendant of that offense. *Id.* at 384, 387, 406 N.W.2d at 420, 421. Rather, the trial court is only prohibited from entering a judgment of conviction on the time barred offense. *Id.*

In deciding whether a lesser included instruction should be given, it must be determined whether there is a reasonable basis in the evidence for an acquittal on the greater charge and for a conviction on the lesser charge. *Id.* at 387, 406 N.W.2d at 421. In assessing reasonableness, the evidence should be viewed in the light most favorable to the defendant. *Id.* at 385, 406 N.W.2d at 420.

While the trial court is given broad discretion with respect to the submission of jury instructions, when the issue is whether the evidence adduced at trial permits the giving of a lesser included instruction, a question of law is presented. *State v. Michels,* 141 Wis. 2d 81, 95, 414 N.W.2d 311, 316 (Ct. App. 1987). We review such questions *de novo* without deference to the trial court's ruling. *State v. Duychak,* 133 Wis. 2d 307, 316, 395 N.W.2d 795, 799 (Ct. App. 1986). A refusal to give a lesser included offense instruction when there exists a reasonable ground in the evidence for acquittal on the greater charge and for conviction on the lesser is error. *Michels,* 141 Wis. 2d at 95, 414 N.W.2d at 316.

The differentiating factors between second-degree murder and reckless homicide are the actor's conduct and state of mind. As to conduct, second-degree murder contemplates an act imminently dangerous to another whereas reckless homicide contemplates an act creating a situation of unreasonable risk and high probability of death or great bodily harm. *See* secs. 940.02(1) and 940.06(2), Stats. As to state of mind, second-degree murder contemplates a depraved mind whereas reckless homicide contemplates a conscious disregard for the safety of another and a willingness to take known chances of perpetrating an injury. *Id.*

■■

In this case, as in most child abuse cases, the actual conduct causing the death or injury is unknown. In addition, as in most criminal cases, proof of actual state of mind is rarely available. Instead, this element is usually proved by inferences drawn from the defendant's conduct at the time of the criminal event. This void in the evidence concerning Wilson's specific conduct leads us to conclude that, viewing the evidence in a light most favorable to Wilson, submission of the lesser included offense of reckless homicide was required.

In *Johnson,* we concluded that the jury could infer that the conduct which caused the death constituted second-degree murder. *See Johnson,* 135 Wis. 2d at 458, 400 N.W.2d at 504. *Johnson,* however, did not present the instant issue of whether the facts also required the submission of reckless homicide as a lesser included offense.

The expert testimony, including that developed in light of current medical knowledge in the field, establishing the aggravated nature of Donald's injuries does not exclusively establish a second-degree

murder or reckless homicide version of this case. Neither, however, does it eliminate one or the other. Donald's injuries could have resulted from conduct imminently dangerous to another (second-degree murder) or conduct creating an unreasonable risk and high probability of death or great bodily harm (reckless homicide). Likewise, these injuries could have resulted from Wilson's depraved mind (second-degree murder) or his conscious disregard for Donald's safety and a willingness to take known chances of perpetrating an injury (reckless homicide).

The pattern of abuse established in this case, while strengthening the state's case for second-degree murder, does not eliminate reckless homicide as a proper lesser included offense. Wilson presented evidence attempting to explain many of the instances of the alleged abuse. In addition, Donald's sisters, the source of these allegations, did not report these incidents until years after Donald's death. Viewing the evidence most favorably to Wilson, a jury could have rejected the claim that Wilson previously abused Donald.

More importantly, even accepting this testimony, the fact remains that Wilson's conduct and state of mind *relative to the events surrounding Donald's death* remain unspecified and, of necessity, in the realm of circumstantial evidence. Accepting that Wilson abused Donald in the past, the evidence does not foreclose a jury finding that Wilson created an unreasonable risk and high probability of death by acting with a conscious disregard for Donald's safety on the date of the fatal injuries.

In the face of *specific* evidence that a child died from multiple ruptures of abdominal tissue when she

was thrown across a room, striking a hard surface on a bed frame, our supreme court has held that reckless homicide, not second-degree murder, is established as a matter of law. *Seidler v. State,* 64 Wis. 2d 456, 466, 219 N.W.2d 320, 326 (1974). We conclude *a fortiori* that in a case such as this, where the evidence reveals similar injuries but no direct evidence of the defendant's act, a jury question as to reckless homicide as against the greater charge of second-degree murder is at least raised.

This conclusion does not place this case into the realm of improper jury speculation as the state contended at oral argument. The proofs run to support either charge, depending upon the inferences to be drawn. Under the state's "speculation theory" respecting a reckless homicide charge, the defense could equally contend that such speculation runs to the second-degree murder charge as well. This is because the same evidence can be used to support either charge.

We conclude that the "speculation theory" will not lie here and that in fact it is appropriate for the jury to view the same evidence as being consistent with one charge as opposed to another. As our courts have stated, a lesser included offense is appropriate where under a different but reasonable view of the evidence a jury could acquit on the greater but convict on the lesser. *Briggs v. State,* 76 Wis. 2d 313, 333, 251 N.W.2d 12, 21 (1977).

In making this choice, the jurors bring commonly known facts and their own experiences to bear, reflecting their attitudes, opinions, and philosophies which cannot be expunged from the deliberation process. *See State v. Poh,* 116 Wis. 2d 510, 518, 343

N.W.2d 108, 113 (1984). Applying these factors, had the question been submitted, the jury could also have reasonably concluded that Wilson's conduct was properly characterized as creating a situation of unreasonable risk and high probability of death to another demonstrating a conscious disregard for the safety of another and a willingness to take a known chance of perpetrating an injury. Sec. 940.06, Stats. The jury's role is to choose between conflicting reasonable inferences. We reverse and remand for a new trial on this issue.

Despite reversal on the above issue, we are compelled to address two other issues. First, Wilson argues that the sixteen year delay between the date of the alleged offense and the filing of the complaint violates his right to due process, citing *United States v. Lovasco,* 431 U.S. 783 (1977). When a defendant seeks to avoid prosecution based on prosecutorial delay, "it must be shown that the defendant has suffered actual prejudice arising from the delay and that the delay arose from an improper motive or purpose ...." *State v. Rivest,* 106 Wis. 2d 406, 418, 316 N.W.2d 395, 401 (1982); *see also United States v. Marion,* 404 U.S. 307, 324 (1971).

Wilson claims prejudice from the delay because of (1) the death of two potential witnesses, (2) the unavailability of certain medical records, (3) the unavailability of exhumation, and (4) the general dulling of memories over a sixteen year period.

Assuming, without deciding, that Wilson was prejudiced by the cited factors, Wilson has not met his burden of proving that the state's delay in charging arose from an improper motive or purpose. *See State v. Davis,* 95 Wis. 2d 55, 58, 288 N.W.2d 870, 871 (Ct. App.

1980). The state asserted that the delay resulted from the insufficiency of the evidence when the case was investigated in both 1969 and 1973. Prosecution was commenced in 1985, according to the state, because new medical interpretation of the evidence concerning potential child abuse made a successful prosecution possible.

Wilson has shown nothing to cause us to doubt the state's assertions. At a hearing to determine if the delay violated due process, defense counsel made no showing that the state deliberately withheld the charge to disadvantage the defendant, to harass him or to punish him in any way. *See id.* at 62, 288 N.W.2d at 873. Indeed, in arguing his position, defense counsel stated that "if the court is looking for purposeful delay, specifically someone had an ill motive . . . , then probably we fail. . . . Now, did the people involved purposefully delay? Yes. Why did they delay? We don't know. I can't tell you why." A defendant's bare allegations of improper tactical purpose on the state's part are insufficient to show malevolent purpose. *Id.* On appeal, Wilson has added nothing to his argument but additional "presumptions" and further allegations.

Failing a showing of improper delay, Wilson argues that the state's "neglect" of the case warrants a determination that his due process rights were violated. His contention is that the state neglected to timely seek the evidence it needed to bring a prosecution. Since controlling precedent makes intentional delay for purpose of gaining a tactical advantage a necessary component of Wilson's due process claim, we must reject Wilson's claim. *See Rivest,* 106 Wis. 2d at 418, 316 N.W.2d at 401; *see also Stoner v. Graddick,*

751 F.2d 1535, 1543 (11th Cir. 1985) (nineteen year delay for which the state could not give reason held not to be violative of due process absent defendant showing intent of state to gain tactical advantage).

Finally, Wilson argues that sec. 940.02, Stats., is unconstitutional because the phrase "evincing a depraved mind, regardless of human life" is "vague and lacking in ascertainable standards of guilt." Our supreme court addressed a similar challenge to sec. 941.30, Stats., which contains the identical phrase, in *Balistreri v. State,* 83 Wis. 2d 440, 265 N.W.2d 290 (1978).

After noting that the questioned phrase has been a part of the statutory law of Wisconsin since 1849, the supreme court concluded that the language as "enacted and as since construed, shows no uncertainty or ambiguity in the gross outlines of the conduct prohibited and therefore is not unconstitutionally vague." *Id.* at 447, 451, 265 N.W.2d at 293, 294. As the cases concerning interpretation of the language in question under sec. 941.30, Stats., are equally applicable to sec. 940.02, Stats., *Balistreri* at 447, 265 N.W.2d at 293, the supreme court's decision is binding on this court. We therefore find the challenged statute constitutional. *See State v. Kennedy,* 134 Wis. 2d 308, 315, 396 N.W.2d 765, 767 (Ct. App. 1986).

*By the Court.*—Judgment and order reversed and cause remanded for a new trial.