STATE OF NEBRASKA, APPELLEE, v. DOUGLAS DAY ARCHBOLD, APPELLANT.

133 N. W. 2d 601

Filed March 12, 1965.   No. 35846.

Crawford, Garvey, Comstock & Nye, Young, Denenberg & Mullery, and Richard L. Spaedt, for appellant.

Clarence A. H. Meyer, Attorney General, and Richard H. Williams, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

SPENCER, J.

This is an appeal from a conviction by a jury on an information charging Douglas Day Archbold, hereinafter referred to as defendant, with manslaughter. Defendant, after the overruling of his motion for a new trial, was sentenced to imprisonment in the Nebraska Penal and Correctional Complex for a period of 5 years.

Defendant, with a friend John Allen, hereinafter referred to as Allen, spent about 2 hours the afternoon of January 4, 1964, target shooting with a .22 automatic pistol owned by defendant. They then spent the early evening visiting some Omaha taverns, and about 10 p.m. left one with the intention of going to another at Sixteenth and Cass Streets. Upon arrival in this vicinity, and while walking south on Sixteenth Street, they observed three men walking ahead of them. At this time the three men, Emmett Bunch, James Robertson, and Dale McCamley, the deceased, hereinafter referred to as Bunch, Robertson, and the deceased, were walking in the same direction about 50 feet ahead of the defendant and Allen. They were joking amongst themselves and making some loud remarks to a newspaper boy known to one of them. They had occasionally looked back because it appeared to them that defendant and Allen were following them. The defendant and Allen assumed they were talking about them, and they passed the bar they had been seeking. When one of the men stopped, Allen told defendant, " 'it looks like them guys are looking for trouble.' " Allen testified the defendant walked up to the one who had stopped and they started to scuffle right away. Allen then turned around and started to walk away.

Bunch and Robertson testified in substance that the defendant came up to the deceased, who had stopped when he thought they were being followed, and the

defendant said, " 'Which one of you has the big mouth,' " pulled a gun, and shoved the deceased up against the building. The deceased grabbed for the gun, a scuffle ensued, and the gun went off. Deceased obtained possession of the gun and used it to strike the defendant across the side of the head and mouth. The defendant regained possession of the gun, pointed it, and started backing away.

There are some variations in the testimony, but there is no question that in this portion of the encounter the defendant was clearly the aggressor. After the defendant backed away, it was Bunch's testimony that he and Robertson tried to get the deceased to go for some coffee, but deceased said, " 'Nobody shoves a gun in my guts and gets away with it,' " and started after the defendant, who by that time was approximately a half block ahead of them. The defendant turned west on Chicago Street and started running. The deceased started after him and Bunch and Robertson followed.

Defendant testified that when he ran about three-quarters of the block and deceased was gaining on him, he turned around and told deceased to stay away. Defendant then started walking backwards and deceased kept walking toward him. Defendant warned deceased about four or five times to leave him alone and stay away. Defendant testified he then started to run and put his hand on the gun and pulled it out and it just went off. Defendant admitted that at the police station after the incident he gave the following version: " 'he (deceased) said, "You got a gun use it," so finally I took it out of my belt and I was still walking backwards and he was walking towards me doubled up and he was walking towards me and he said, "Go ahead and shoot," and I just "Bam," and he spun around and grabbed himself and started running east on Chicago and I run down 17th Street.' "

Bunch testified that he was following some distance behind the deceased; that he saw the defendant and the

deceased about 15 or 20 feet apart. Defendant was walking backwards and defendant said, " 'Don't come any closer.' " The defendant shot the deceased in the chest and started running again. The deceased had closed in to where he was only 5 to 10 feet from the defendant at the time the deceased was shot.

We consider defendant's assignments of error as designated and in the order listed in his brief. Number I involves the giving of instruction No. 13, which reads: "You are further instructed 'the intentional pointing of a loaded pistol at a person is ordinarily an unlawful assault, and when under these circumstances the pistol is unintentionally discharged and a person killed, such acts constitute manslaughter'." Defendant does not deny that this is a correct statement of law, but insists that when it is applied to the facts in this case it is erroneous and prejudicial. This instruction is derived from Ford v. State, 71 Neb. 246, 98 N. W. 807, 115 Am. S. R. 591, which involved the accidental discharge of a gun intentionally pointed at the deceased. Self-defense was not an issue in that case. Defendant argues that in this case the instruction is equivalent to directing a verdict of guilty. It is a sufficient answer to defendant's contention to say that except for the issue of self-defense, the defendant would be guilty of manslaughter on his own testimony if the jury found that he intentionally pointed the gun at the deceased.

The issue of self-defense was fairly and adequately covered in the trial court's instruction No. 14, which concluded with the following paragraph: "It is necessary for conviction that the State prove beyond a reasonable doubt that the defendant, Douglas Day Archbold, was not acting in self-defense and there is no burden on the defendant to prove that he was acting in self-defense; and if the evidence in this case does not establish beyond a reasonable doubt that the defendant was not acting in self-defense, then you should find the defendant not guilty of manslaughter." In another in-

struction the jury was specifically told that it was to consider the instructions as a whole and could not pick out one instruction and disregard others. There is no merit to defendant's contention.

Assignment No. II complains that the court's instructions were conflicting and confusing. This is directed to the fact that in instruction No. 8 the jury was told: "The State must also prove beyond a reasonable doubt that the shooting did not occur accidentally and if it fails to sustain such burden, you should find the defendant not guilty." Defendant contends this instruction is proper but that it cannot be reconciled with instruction No. 13 above, which defines the accidental discharge of a gun to constitute manslaughter but this is only when it is intentionally pointed at another person. In this case, the defendant testified that he did not intentionally point the gun toward deceased. When instructions Nos. 8 and 13 are read with all the other instructions in the case, there is no conflict.

In assignments Nos. III and IIIa, defendant argues instruction No. 14, which submitted the issue of whether the force used was reasonable or excessive, is erroneous. It is the defendant's position that: "The Court erred in failing to instruct the jury that if defendant believed great bodily injury or death was imminent, it was not necessary for defendant to consider whether a reasonable man might not think it possible to fly with safety or to disable his assailant rather than kill him; but that he could stand his ground and if he killed his assailant, he had not exceeded the bounds of lawful self-defense."

Defendant here is attempting to avoid the test of the reasonable man. He urges that a person has a right to kill if he has a subjective belief that he is in danger of great bodily injury or death, irrespective of whether a reasonable man would so conclude. This is not the rule in Nebraska. Defendant's argument is adequately answered in Housch v. State, 43 Neb. 163, 61 N. W. 571, in which this court said: "The bare belief of one as-

saulted that he is about to suffer death or great bodily harm will not of itself justify him in taking the life of his adversary. There must exist reasonable ground for such belief at the time of the killing, and the existence of such grounds is a question of fact for the jury." The following quotation from the same case is a particularly pertinent observation on defendant's contention: "The principle which underlies the rule there stated is that human life should not be made to depend upon conditions so unreliable and hazardous as the bare belief of any man that he is in danger of death or bodily harm; * * *."

Assignment No. IV relates to the admission into evidence of a description of the defendant's conduct and demeanor during the period at the police station immediately following his apprehension. The testimony elicited the conclusion of the officer rather than his observation and should have been stricken, but we find that this was not prejudicially erroneous when considered in the light of the entire record herein.

Assignment No. V is that the court erred in failing to dismiss the action at the conclusion of the State's case. There is no merit to this assignment, and it requires no discussion herein.

Defendant's assignment No. VI is also directed at instruction No. 14. Defendant complains the instruction was erroneous in that it drew the issue as to whether defendant's conduct was necessary to protect his person, or whether defendant was acting in a spirit of ill will or retaliation. This assignment is directed at the following portion of instruction No. 14: "In determining whether the alleged conduct of the defendant was committed in necessary defense of his person and in determining whether the amount of force or violence used was reasonable and apparently necessary for said purpose, you should consider all the acts and conduct of the defendant and Dale Theodore McCamley at the time in question; the means, nature and extent of any

force or violence, or threats of force or violence used or made by Dale Theodore McCamley toward the defendant, and all the facts and circumstances surrounding the occurrence, as shown by the evidence, bearing upon the question whether the conduct of the defendant was reasonably and apparently necessary, in good faith, to defend his person or whether the defendant was acting in a spirit of ill will or retaliation." The instruction is not erroneous and was proper herein. It apparently is an adaptation of an instruction from Standardized Instructions to Juries, 33 Nebraska Law Review, No. 25D, p. 137, adopted by the Association of District Judges of Nebraska.

Defendant's assignment No. VII complains that instruction No. 14 was too narrow in scope in that it was limited to fear of death or great bodily injury from the deceased, and did not include the two companions of the deceased. The companions of the deceased were not at any stage involved with the defendant. It is true that they were following some distance behind the deceased when he was shot, but they had not been participating during the previous encounter. If defendant wished a more specific instruction, he should have tendered one. "If the court has instructed the jury generally on the law of the case and has not withdrawn any essential issue from consideration of the jury error cannot be predicated on failure to charge on some particular phase of the case, unless proper instruction has been requested by the party complaining." Cox v. State, 159 Neb. 811, 68 N. W. 2d 497, 66 A. L. R. 2d 293.

We find all of the defendant's contentions to be without merit, and therefore affirm the judgment of the trial court.

AFFIRMED.