ZEHMER, Judge.
This case is a tragic story which almost defies belief. Rebecca Marie Zuber (known as Becky) was charged with the first degree murder of her father. The state presented evidence which convinced the jury that Miss Zuber, a 16 year old child, persuaded her young friend, Jerry Clenny, the codefendant who actually shot Mr. Zu-ber with a 12 gauge shot gun, to kill her father, for which she apparently agreed to pay him a substantial sum of money. She was convicted as charged and sentenced to life imprisonment.
Miss Zuber appeals, raising two points. First, she argues that the court’s exclusion of the proffered testimony concerning her mental defects was error because the evidence was relevant and admissible on the issues of her capacity to form premeditation and specific intent. Second, she argues that the trial court should have granted her motion for mistrial because the trial court granted codefendant Clenny’s motion for mistrial (and effectively severed his case from her trial) after Clenny’s confession implicating her in the payment scheme had been received in evidence, and that confession would not have been admissible in her trial if the two cases had not been tried together up to that point. After carefully reviewing the record, we determine that no reversible error occurred and affirm.
The facts in this case are essentially undisputed. Becky Zuber was at a skating rink with some friends in the late afternoon of March 3,1984. She received a telephone call from her father which resulted in a violent argument between them. Apparently he complained about her errant behavior, called her profane names, and told her that she would not be permitted to go on a trip to the Bahama Islands after having previously given his permission for her to do so and buying her an airline ticket. After the phone call, Becky told her friend Clenny that she wished her father were dead and, after discussing the matter further, the two of them decided to go to his house, get his shot gun and some buckshot, and proceed to her house to kill Mr. Zuber. She drove the car to Clenny’s house, they obtained the gun, and then drove to her house. When it appeared that her father might not be home, they drove past the house and stopped down the road to use a telephone. Becky called home, her father answered the phone, and she immediately hung up without talking to him. Then Becky and Clenny drove back to her house, and Clenny got out of the car and walked through the woods to a point near the front porch where he was hidden from view. The dogs began to bark, causing Mr. Zuber to walk out on the porch to investigate. Clenny pointed the gun at Mr. Zuber and fired two shots, killing him instantly. Clenny then returned to the car and Becky drove back toward town. She asked if her father was dead and Clenny said that he was. They stopped to buy a beer for Clen-ny and then returned to the skating rink. Becky was upset and crying when she arrived, and told an employee of the skating rink that she had just had someone else kill her father. The employee promptly called the sheriff.
At trial the testimony of a clinical psychologist was proffered by appellant’s attorney for the purpose of showing that Becky was suffering from mental defects and thus was incapable of forming the requisite specific intent and premeditation necessary to be guilty of first degree murder. The witness was duly qualified as an expert and testified that he examined Becky on seven occasions, commencing in April 1984. He concluded from his interviews that she had grown up in a home environment that was abusive and that aggressiveness and violence were the norm. Becky said she had been physically and sexually abused by her father. Her mother, an alcoholic, had killed Becky’s brother and then committed suicide while in jail awaiting trial on that charge. The expert witness testified that Becky had become so desensitized to violence because of her family environment and experience that she *672 personally believed at the time she had her father killed it was the right thing to do. Recognized clinical tests performed on her revealed an emotional maturity level of a nine year old and an I.Q. slightly below the normal range. The witness stated that Becky was not insane at the time of the offense because she knew that the act was wrong and knew the consequences of her conduct. He also said that she was in control of herself at the time and that she made an intentional decision. He maintained, however, that she definitely suffered from mental defects, and even though she knew what she was doing, “in her own mind it was not wrong” because “she thought it was right to kill him ... at that moment.” (R. 427.)
We find no error in excluding the testimony of this clinical psychologist. It did not establish that Becky was insane at the time of the offense, and was not admissible on that issue. Nor was it admissible to prove that Becky had a diminished capacity to form the requisite premeditation and specific intent within the ambit of the holding in Gurganus v. State, 451 So.2d 817 (Fla.1984). The expert witness was never asked, for reasons known only to defense counsel, whether the mental defects he described were such as would adversely affect and diminish her mental capacity to form the specific intent to commit murder. On the contrary, the testimony appears to reinforce the conclusion that she was fully capable of acting with specific intent at the time of the offense. We do not believe that the psychologist’s opinion testimony, that Becky believed in her own mind that what she was doing was right, is so definitively admissible under the rule announced in Gurganus that the trial judge abused his discretion in excluding this evidence.
With respect to appellant’s second point, the evidence presented by the state showed that a check from Mr. Zuber’s check book had been made out to Clenny for $1230, the account balance shown in the check book. The fingerprints of both Becky and Clenny were found on the check. The check was crudely and incompletely filled out, however, and was not signed by anyone as drawer. In addition, Clenny’s pre-trial confession, admitted in evidence, recited the fact that Becky had promised to pay him all the money in her father’s checking account for shooting her father. Becky’s pre-trial confession, also admitted in evidence, denied that she promised any money for the killing, and stated that when she told Clen-ny she wished her father was dead, he offered to get his gun and shoot him for her. She also said that at first she was going to shoot him, but changed her mind before arriving at the house. At the joint trial of the codefendants, the court received both confessions in evidence upon a finding that they were sufficiently “interlocking” to be admissible.
Appellant contends that Clenny’s confession adversely implicated her in respect to the state’s contention that she “hired” him to kill her father, and that this pre-trial statement was the only evidence of that fact before the jury. At trial, Clenny testified in his own defense and repudiated the statement by denying that there was any discussion of paying him money for the killing, and, appellant argues, but for the joint trial Clenny’s confession could not have been heard by the jury and thus, when the joint trial ended with the granting of the mistrial, it was error for the court to submit the case to the jury with knowledge of that confession, citing Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Appellant further argues that the giving of a curative instruction was simply not enough to erase the prejudice to the defendant, citing Campfield v. State, 189 So.2d 642 (Fla. 2d DCA 1966), and Dean v. State, 325 So.2d 14 (Fla. 1st DCA 1975), cert. denied, 333 So.2d 465 (Fla.1976), and directs our attention to Lee v. Illinois, _ U.S. _, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), holding that where a codefendant’s confession has been offered as substantive evidence against the defendant, “when the discrepancies between the statements are not insignificant, the codefendant’s confession *673 may not be admitted.” _ U.S. at _, 106 S.Ct. at 2065, 90 L.Ed.2d at 529.
The state contends that the confessions were sufficiently interlocking, that is, recited the same facts and occurrences without significant contradiction, to be admissible under Parker v. Randolph, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979); McCray v. State, 416 So.2d 804 (Fla.1982); and Puiatti v. State, 495 So.2d 128 (Fla.1986). Moreover, it contends that the failure to grant appellant a mistrial after Clenny’s trial was effectively severed due to the order granting him a mistrial, even if error, was harmless.
We agree with the state that no reversible error has been shown under this second point. There was evidence in the form of the partially completed check to support the state’s argument that Becky had attempted to pay or promised to pay Clenny for this heinous act. Thus, Clen-ny’s pretrial statement was not the sole evidence of this contention but was corroborative and, in a limited sense, cumulative. In Puiatti v. State, 495 So.2d at 130, the Florida Supreme Court observed that “interlocking confessions need not be identical statements; it is sufficient if the confessions are substantially consistent on the major elements of the crime involved.” Proof that Becky agreed to pay Clenny for the killing was not essential to convict her of first degree murder in view of the other essentially undisputed evidence of her assistance and participation in the crime as a principal. More importantly, Clenny voluntarily testified in his own defense, repudiated the truthfulness of his pre-trial confession, and was subjected to substantial cross-examination on this subject by appellant’s trial counsel. Since it was the lack of opportunity to confront the codefendant and cross-examine in Lee v. Illinois, supra, which underlies its holding that the confession was inadmissible for violation of the sixth amendment right to confrontation, we conclude that that decision does not require reversal in this case.
Moreover, in Lee the court expressly recognized that such error was subject to the harmless error rule and remanded to the state court for a determination of whether the error was harmless in the context of the entire case. We agree with the state that in the context of this case, even if it were error to have admitted Clenny’s confession, in view of appellant’s crude preparation of the check to Clenny, the opportunity for full cross-examination of Clenny by appellant on the preparation of that check and his pre-trial statement about the matter of payment, and the otherwise overwhelming evidence of appellant’s guilt, the error would be harmless beyond a reasonable doubt. See Brownlee v. State, 478 So.2d 467 (Fla. 4th DCA 1985).
AFFIRMED.
SHIVERS and BARFIELD, JJ., concur.