STATE OF NEBRASKA, APPELLEE, V. FRED B. OLIVA, APPELLANT.

422 N.W.2d 53

Filed April 8, 1988.   No. 87-597.

Thomas M. Kenney, Douglas County Public Defender, and Timothy P. Burns, for appellant.

Robert M. Spire, Attorney General, and Lisa D. Martin-Price, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

The defendant, Fred B. Oliva, was found guilty by a jury of

the offense of first degree assault. The assault victim was the defendant's wife, Lupe Oliva.

Three witnesses testified for the State. According to Lupe Oliva, on the morning of November 1, 1986, she and her husband began arguing, after which a struggle ensued. The defendant pinned her on the couch and hit her in the face. This episode continued for about 1 hour, during which time the defendant made a number of verbal threats. The defendant used Vise-Grips to hit Lupe and to crush her fingers. During the assault Harold Spoor, the defendant's ex-son-in-law, came into the house. He was apparently unable to do anything to end the attack. The defendant twisted Mrs. Oliva's arm behind her back, and it made a popping sound. The defendant and Harold Spoor took Lupe to the hospital so that her arm could be treated. On the way to the hospital the defendant told Lupe to tell the people at the hospital that she had fallen down the stairs. While alone in the x-ray room, Lupe told an attendant the truth about the matter. The State introduced a number of photographs taken of Lupe Oliva after the assault.

Bruce Holcomb was the doctor who examined Lupe at the hospital. He testified that she had a spiral fracture of her right humerus and contusions and abrasions to the fingers on both hands. The fracture was consistent with a twisting, torquing injury. The injuries to her hands were caused by isolated episodes of trauma consistent with injuries that could be caused by the use of Vise-Grips. Viewing the injuries in their totality, it was the doctor's opinion that they were not caused by one generalized fall.

Harold Spoor also testified for the prosecution. According to Spoor, when he came into the house, Lupe and Fred Oliva were arguing. The defendant was pinching Lupe's fingers with Vise-Grips and hitting her. Spoor did not intervene because he knew that the defendant carried a pistol. He heard Lupe's arm snap when the defendant was twisting it.

The defendant testified that he saw a packet of cocaine fall out of Lupe's pocket, which upset him, and he began to argue with her. While he was still in bed, he heard her run out of the bathroom and then trip and fall down the steps.

The defense moved in limine to exclude testimony

concerning the defendant's prior misconduct. The motion was sustained, but the court noted that the evidence might be relevant to another issue depending on how the defense developed its case.

During cross-examination defense counsel questioned Lupe Oliva about the defendant's physical condition in an attempt to show Fred Oliva was physically incapable of assaulting his wife. The pertinent questioning is as follows:

Q Isn't it true all the while you have known Fred Oliva he has been on disability?

A Yeah.

Q The disability is because of a curvature of the spine problem; is that correct?

A Yes.

Q He can't work because of that; is that correct?

A That's what they say.

Q And he gets a social security check for that; does he not?

A Yes.

Q He has been doing this ever since you have known him?

A Yes.

Q He also has a heart condition; does he not?

A Yeah.

Q He was admitted to the hospital with a heart attack on September 30th of 1986; is that correct?

A They really didn't know what was wrong. There was a lot of problems.

Defense counsel continued at some length, questioning Lupe Oliva about the defendant's physical ailments.

On redirect examination, the deputy county attorney elicited the following testimony over the defendant's objection:

Q Counsel asked numerous questions concerning Mr. Oliva's physical ability, with respect to ability to work and so forth. Is this the first time you have had an altercation or fight with your husband?

A No.

. . . .

Q Is this the first time your husband has performed

physical violence upon you?

A No.

Q How many previous times has he physically assaulted you?

A It's been several times and there has been other people in the household when he had done it.

Q Would it be fair to say this was the most severe beating he has given you?

A Yes.

The trial judge overruled the defendant's objection to this evidence because the defense raised the issue of physical impossibility or improbability, thereby opening the door for the testimony as to the prior assaults.

On appeal the defendant claims the court erred in allowing into evidence the testimony of Lupe Oliva concerning prior incidents of assault. We affirm.

The defendant relies on the definition of relevant evidence contained in Neb. Rev. Stat. § 27-401 (Reissue 1985) in making the following argument:

> All the prosecutor elicited from Lupe was the fact that the Defendant had physically assaulted her on several occasions prior to November 1. Nowhere does the evidence show the date, type, length, or character of the physical assaults. The fact that prior assaults have taken place does not necessarily make it relevant to whether the Defendant was physically capable of assaulting Lupe on November 1. General assaults could mean just about anything.

Brief for Appellant at 4-5. The argument is not that the evidence fails to address a material issue (physical ability), but that the evidence is so lacking in probative force that it should have been excluded. The modern view, however, is that evidence is probative if it tends in any degree to alter the probability of a material fact. See, 1A J. Wigmore, Evidence in Trials at Common Law § 37.4 (P. Tillers rev. 1983); *State v. Ryan*, 226 Neb. 59, 409 N.W.2d 579 (1987). The view is codified in § 27-401: "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable

or less probable than it would be without the evidence."

Thus, the defendant's objection that the inference of physical ability does "not necessarily" follow from the evidence offered by the prosecution is untenable. See McCormick on Evidence § 185 at 543 (E. Cleary 3d ed. 1984). It is enough if the evidence offered could show that a material fact is slightly more probable than it would appear without that evidence. The evidence concerning previous episodes of physical violence met this minimum burden of relevance.

In *State v. Robertson*, 219 Neb. 782, 366 N.W.2d 429 (1985), this court held that admission of a codefendant's conviction as evidence against the defendant was error under § 27-401 because the evidence lacked any probative value whatsoever. We said: "With all the variables and unknown quantities entering another jury's verdict, any connection between [codefendant's] conviction and [defendant's] guilt is reduced to a possibility, not the rational relationship based on likelihood required for relevant evidence." *Id.* at 789-90, 366 N.W.2d at 434. Similar language was again used in *Crowder v. Aurora Co-op Elev. Co.*, 223 Neb. 704, 393 N.W.2d 250 (1986). As we have said, § 27-401 requires only that the degree of probativeness be something more than nothing. The above-quoted language should not be read as requiring any degree of probativeness beyond that which is necessary under § 27-401.

Consideration of probative value does not end with the determination that the prior assaults were relevant. Under Neb. Rev. Stat. § 27-403 (Reissue 1985), relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." In this case the evidence of prior assaults was only minimally probative on the issue for which it was offered, physical ability. The jury would have to assume first that the prior assaults were at least severe enough to show that, in the past, the defendant was physically capable of inflicting the type of harm that was inflicted on November 1, 1986. The validity of such an assumption or inference was called into question by the victim's own statement that the assault on the date in question was the most severe. The jury

would also have to infer that the defendant's physical condition had not deteriorated to any material extent between the time of the prior assaults and the assault on November 1. Such an inference is made less tenable by the fact that there was no evidence as to how much time elapsed between assaults, and also by the fact that there was evidence that just 1 month prior to the assault the defendant suffered a possible heart attack. A chain of inferences is no stronger than its weakest link. The probative force on the issue of physical ability was at best weak.

The evidence of prior assaults was, however, extremely probative on the one issue for which it may not be offered: character of the accused. See Neb. Rev. Stat. § 27-404(2) (Reissue 1985). The prosecution's failure to show a material relationship between the prior assaults and the assault in question suggests that the State was more interested in attacking the defendant's character than determining whether the defendant was in fact physically capable of committing the crime.

Without passing on the issue of whether the admission of the prior assault testimony was an abuse of discretion, we note that an erroneous admission of evidence in a criminal trial is not prejudicial if it can be said that the error was harmless beyond a reasonable doubt. *State v. Lenz*, 227 Neb. 692, 419 N.W.2d 670 (1988). In this case there was overwhelming evidence to establish the defendant's guilt beyond a reasonable doubt. Lupe Oliva testified at length about the events of November 1, 1986. The emergency room physician's testimony as to the nature of her physical injuries and the photographs of those injuries indicate that she was in fact assaulted. Lupe Oliva's testimony was also corroborated by an eyewitness, who testified that the defendant pinched his wife's fingers with Vise-Grips, hit her, and broke her arm by twisting it behind her back. Juxtaposed to this evidence we have the defendant's testimony that his wife fell down the stairs. The defendant's credibility was, of course, essential to this defense. Even without the prior assault testimony, however, the defendant's version of the events was incredible. His story was contradicted by expert medical testimony, eyewitness testimony, and photographic evidence. If any error was committed by the inclusion of the prior assaults,

it was harmless beyond a reasonable doubt. The conviction is therefore affirmed.

AFFIRMED.