STATE OF NEBRASKA, APPELLEE, V. BRENT D. KISTENMACHER, APPELLANT.
436 N.W.2d 168
Filed February 24, 1989.   No. 87-1050.

Thomas M. Kenney, Douglas County Public Defender, and Thomas C. Riley for appellant.

Robert M. Spire, Attorney General, and LeRoy W. Sievers for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.
A jury found the defendant, Brent D. Kistenmacher, guilty of manslaughter in violation of Neb. Rev. Stat. § 28-305(1)

(Reissue 1985), and of using a firearm to commit a felony, a violation of Neb. Rev. Stat. § 28-1205(1) (Reissue 1985), in the shooting death of Jason Cuellar. The defendant was subsequently sentenced to not less than 6 2/3 nor more than 20 years' imprisonment on count I, manslaughter, and not less than 3 nor more than 5 years' imprisonment on count II, the firearm charge, the sentence on count II to run consecutively to the sentence on count I. Defendant appeals, asserting that the trial court erred in (1) granting the State's motion in limine precluding the defendant from offering psychiatric testimony relevant to a material issue in the case; (2) instructing the jury over the defendant's objection that the intentional pointing of a loaded firearm at another person, unless legally justified, is ordinarily an unlawful assault; and (3) imposing an excessive sentence.

On April 12, 1987, at approximately 4:30 p.m., the defendant had returned to his apartment after playing in a softball game. A short time later the deceased, Cuellar, and Bill Morast arrived at the defendant's apartment. Cuellar and Morast remained for about an hour. Also present was Mark Deitering, the defendant's roommate. Thereafter, all four left the apartment, as Kistenmacher and Deitering had made plans to visit some friends.

The defendant and Deitering returned to their apartment at about 9:15 that evening. No one else was in the apartment at that time. The two went into the defendant's room and visited until approximately 9:50 p.m., when they began to hear noises coming from another room of the apartment.

The defendant and Deitering did not know anyone else was in the apartment at that time. Unknown to them, Cuellar and Morast had returned. Cuellar and Morast could hear the defendant and Deitering in the apartment, and let themselves in through the unlocked front door. Cuellar and Morast then sat down on the couch, and Cuellar began to throw Hot Tamale candies at the bedroom door of the defendant.

The defendant owned a .22-caliber double-action revolver which had been given to him by his father several months earlier. He kept this revolver in his nightstand drawer. The defendant testified that he kept the weapon loaded, except that

the chamber directly underneath the hammer and the next forward chamber were kept empty.

After hearing the noises caused by Cuellar's throwing the candies at the defendant's door, the defendant and Deitering exited the bedroom and walked down the hall toward the living room. At that point, the defendant thought the noise had been caused by an intruder. As they were approaching the living room, either the defendant or Deitering stated, "Who is it, we've got a gun," and Cuellar and Morast chuckled a bit.

When the defendant and Deitering reached the end of the hall, they recognized the "intruder" as Morast and Cuellar. At that point, believing that the chamber under the hammer was empty, the defendant raised the gun, pointed it at the deceased, and pulled the trigger. A shot was fired, striking Cuellar in the head. At that time, "everybody started just freaking out," and the defendant told Deitering to call 911 for an ambulance.

During questioning at the police station, the defendant admitted that he had shot Cuellar and that at the time of the shooting he knew it was Cuellar and not an intruder. When asked why he would point a gun at a friend of his, the defendant stated that his group of friends would play "head games" with each other to "freak everybody out" and would do things such as point guns at people.

Prior to the trial, the defense notified the State that it intended to call Dr. Thomas Radecki, a psychiatrist, as a witness on behalf of the defendant. The testimony of Dr. Radecki was intended to bear on the state of mind of the defendant at the time of the shooting. The testimony was being offered by the defense to negate the prosecution's claim of reckless conduct on behalf of the defendant. The substance of Dr. Radecki's testimony is contained in an offer of proof made by defense counsel at trial. He testified that his examination of the defendant revealed that Brent Kistenmacher was a 20-year-old who had become "desensitized to the serious nature of the games he was playing." This desensitization was brought about by, among other factors, his choice of violent television programs, heavy metal music, and horror-type movies. Dr. Radecki also stated that this "desensitization" theory was widely accepted in his profession. Because of desensitization,

the defendant could not and did not appreciate the great risk of danger posed by his behavior. Evidence of mental defects (desensitization) was excluded in *Zuber v. State*, 500 So. 2d 670 (Fla. App. 1986), the court noting, however, that the expert was not asked whether the defects described were such as would adversely affect and diminish defendant's mental capacity to form specific intent. That omission is not present in this case. Defense counsel argued that this testimony was relevant, as the definition of "recklessly" contained in Neb. Rev. Stat. § 28-109(19) (Reissue 1985) contains a subjective intent requirement, and Dr. Radecki's testimony would have some bearing on the determination of whether the defendant had the requisite subjective intent. The district court sustained the State's motion in limine to exclude the proposed testimony.

The defendant's first assignment of error concerns the exclusion of this expert testimony. Defense counsel asserts that the exclusion of the testimony of Dr. Radecki denied the defendant his constitutional right to present relevant, material evidence in his defense, as guaranteed by the U.S. Supreme Court in *Washington v. Texas*, 388 U.S. 14, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967), and recognized by this court in *State v. Ammons*, 208 Neb. 797, 305 N.W.2d 808 (1981). Before we can determine whether this right was abridged, it must first be established that this evidence is relevant to the defendant's defense.

The focus of the prosecution was that the defendant was guilty of manslaughter in violation of § 28-305(1) because the defendant had killed another, without malice, while in the commission of an unlawful act. The underlying unlawful act was assault in the third degree.

Third degree assault is defined in Neb. Rev. Stat. § 28-310 (Reissue 1985). That statute provides in part: "(1) A person commits the offense of assault in the third degree if he: (a) Intentionally, knowingly, or recklessly causes bodily injury to another person; or (b) Threatens another in a menacing manner." Specifically, it was the State's position that the defendant acted recklessly. The term "recklessly" is statutorily defined in § 28-109(19). This subsection provides the following:

(19) Recklessly shall mean acting with respect to a material element of an offense when any person disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

The State argues that in accordance with *State v. Hoffman*, 227 Neb. 131, 416 N.W.2d 231 (1987), the definition of "recklessly" contained in § 28-109(19) is an objective one, thereby making any testimony as to the defendant's subjective intent irrelevant. In *State v. Hoffman, supra*, the defendant became intoxicated, drove his car, and was involved in an accident which took the life of another driver. In *Hoffman*, the defendant was arguing that he did not have the mental capacity necessary to form the general intent required for second degree assault. Hoffman contended that his intoxication "induced" him to climb behind the wheel, and that he therefore did not "intentionally" cause the death of the victim. When defining "recklessly" in *Hoffman*, this court stated at 139, 416 N.W.2d at 237:

However, under § 28-309(1)(b) concerning a second degree assault based on a reckless act or conduct, an intent *to inflict or cause bodily injury is not an element; rather,* the reckless act or conduct, causing serious bodily injury, is the gravamen. A reckless act involves a conscious choice in a course of action, made with knowledge of a serious danger or risk to another as a result of such choice of action or with knowledge of the attendant circumstances which, to a reasonable person, would indicate or disclose a serious danger or risk to another as a result of the course of action selected. See, *People v. Mason*, 198 Misc. 452, 97 N.Y.S.2d 462 (1950); *State v. Bischert*, 131 Mont. 152, 308 P.2d 969 (1957); 22 C.J.S. *Criminal Law* § 31(5) (1961).

The defendant's argument in this action is analogous to the theory propounded by the defendant in *Hoffman* and rejected

by this court. In this case, Kistenmacher's act involved a conscious choice in a course of action: pointing a loaded firearm at a person and pulling the trigger, made with the knowledge of a serious danger or risk to another as a result of the choice of action; the defendant realized that some danger existed when he pointed a loaded gun at Cuellar and pulled the trigger, which to a reasonable person would indicate or disclose a serious danger or risk to another as a result of the course of action selected; a reasonable person in a similar situation would realize the serious risk that his conduct posed to the victim.

Just as we rejected the argument in *Hoffman* that the statutory definition of "recklessly" contains a subjective element, so must we reject that argument in this case. Therefore, because the test for recklessness as statutorily defined in § 28-109(19) is purely objective, Dr. Radecki's testimony was irrelevant and properly excluded by the district court.

The defendant next assigns as error the instruction given to the jury regarding the definition of an unlawful assault. This jury instruction reads: "You are further instructed that the intentional pointing of a loaded firearm at another person, unless legally justified, is ordinarily an unlawful assault. Further, it is the law of this state that one who threatens another in a menacing manner, unless legally justified, commits an unlawful assault." The defendant contends that the giving of the first portion of the instruction, "the intentional pointing of a loaded firearm at another person, unless legally justified, is ordinarily an unlawful assault," was given in error, as this instruction invaded the province of the jury to pass upon the facts of the case.

This instruction was apparently taken from a line of Nebraska Supreme Court cases. *Ford v. State*, 71 Neb. 246, 98 N.W. 807 (1904); *Egbert v. State*, 113 Neb. 790, 205 N.W. 252 (1925); *Turpit v. State*, 154 Neb. 385, 48 N.W.2d 83 (1951); *State v. Archbold*, 178 Neb. 433, 133 N.W.2d 601 (1965). The trial court retains discretion in the wording of jury instructions. *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984). The instruction that was given to the jury in this case is a correct statement of the law. As stated in *State v. Bartholomew*, 212

Neb. 270, 275, 322 N.W.2d 432, 436 (1982), " 'All the instructions must be read together and if the instructions taken as a whole correctly state the law, are not misleading, and adequately cover the issues, there is no prejudicial error.' "

This court has held, and it is a correct statement of the law and therefore proper to instruct, that "the intentional pointing of a loaded firearm at another person, unless legally justified, is ordinarily an unlawful assault." Therefore, this second assignment of error is without merit.

The defendant next assigns as error the sentence imposed upon him. The defendant was sentenced to a combined term of 9 2/3 to 25 years' imprisonment. The defendant was convicted of manslaughter, a Class III felony, carrying the possibility of a term of imprisonment from 1 to 20 years. Additionally, the defendant was convicted of use of a firearm in the commission of a felony, also a Class III felony. Section 28-1205 regarding use of a firearm in the commission of a felony requires that sentence to run consecutively to the sentence imposed for the underlying felony. In this case, the district court sentenced the defendant to the maximum possible sentence for manslaughter, 6 2/3 to 20 years' imprisonment, and then a consecutive sentence of 3 to 5 years' imprisonment for the use of a firearm charge.

The sentences given are obviously within the limits prescribed by statute. This court has repeatedly held that sentences imposed within the limits prescribed by the statutes in question will not be disturbed on appeal, in the absence of an abuse of discretion. *State v. Dillon*, 222 Neb. 131, 382 N.W.2d 353 (1986). From a review of the record, no abuse of discretion is shown. Therefore, the defendant's contention that the trial court imposed an excessive sentence is without merit.

We cannot sustain any of the assignments of error urged by the defendant. It therefore follows that the judgment and sentences of the district court must be and are affirmed.

AFFIRMED.

WHITE, J., concurring.

I concur with the majority in affirming the appellant's conviction. However, I cannot agree with the court's interpretation of Neb. Rev. Stat. § 28-109(19) (Reissue 1985). This court holds that the definition of "recklessly" contained in

§ 28-109(19) is "purely objective," and therefore the subjective intent of the appellant in this case was wholly irrelevant. I believe such an interpretation is contrary to the plain meaning of the statute.

Section 28-109(19) provides:

> Recklessly shall mean acting with respect to a material element of an offense when any person disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

This language supports an inference that the Legislature, in adopting § 28-109(19), intended the subjective mental state of the defendant to be an element of the definition of "recklessly." Section 28-109(19) requires the fact finder to determine whether the defendant was reckless by finding that the risk the defendant disregarded was "of such a nature and degree that, *considering the nature and purpose of the actor's conduct and the circumstances known to him* . . . ." (Emphasis supplied.) This language connotes an element of subjectivity.

The statute does not say the risk must be of such a nature and degree that consideration must be made of the actor's conduct and the circumstances as seen by a reasonable person, but instead contains the phrase "and the circumstances known to him." It seems inconceivable that the majority could ignore this language and instead interpret the statute as containing only the objective standard of a reasonable person.

In *State v. Hoffman*, 227 Neb. 131, 139, 416 N.W.2d 231, 237 (1987), in language relied on by the majority, we stated,

> A reckless act [as defined in § 28-109(19)] involves a conscious choice in a course of action, made with knowledge of a serious danger or risk to another as a result of such choice of action or with knowledge of the attendant circumstances which, *to a reasonable person*, would indicate or disclose a serious danger or risk to another as a result of the course of action selected.

(Emphasis supplied.) The emphasized language contained in *Hoffman* is clearly contrary to the express words contained in § 28-109(19). In *Hoffman*, we held that the attendant circumstances must be examined as seen through the eyes of a hypothetical reasonable person. Yet, the statute states that we must view the circumstances as known to the defendant, before we can determine whether a disregard of the risks involved is a gross deviation from the acceptable standard of conduct. I believe that this court is required to follow the plain words contained in the statute, and any language in *Hoffman* misconstruing those words should now be disapproved. Therefore, the testimony of Dr. Radecki as to the subjective mental state of the defendant, that Brent Kistenmacher was "very desensitized to the great risk [of pointing a gun at the victim] and didn't realize . . . by any means, the great dangers that he was taking" was relevant in this case.

Whether this exclusion of psychiatric testimony was reversible error is another question. Expert testimony is admissible when it would assist the trier of fact to understand evidence or determine a fact in issue, Neb. Rev. Stat. § 27-702 (Reissue 1985), and *State v. Birge*, 223 Neb. 761, 393 N.W.2d 713 (1986), and evidence of an accused's mental condition at the time of the offense is always admissible to prove absence of intent, *State v. Vosler*, 216 Neb. 461, 345 N.W.2d 806 (1984). In addition, in *State v. Ammons*, 208 Neb. 797, 305 N.W.2d 808 (1981), this court recognized that the right of a defendant to present his own witnesses to establish a defense is a fundamental element of due process of law under the sixth amendment right to compulsory process, as established by the U.S. Supreme Court in *Washington v. Texas*, 388 U.S. 14, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). However, "No judgment shall be set aside, or new trial granted, or judgment rendered in any criminal case, on the grounds of . . . the improper . . . rejection of evidence . . . if the Supreme Court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred." Neb. Rev. Stat. § 29-2308 (Reissue 1985); *State v. Turner*, 221 Neb. 852, 381 N.W.2d 149 (1986).

Harmless error exists in a jury trial of a criminal case when

there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in a verdict adverse to a substantial right of the defendant. *State v. Watkins*, 227 Neb. 677, 419 N.W.2d 660 (1988). Error in admitting or excluding evidence in a criminal trial is prejudicial unless it can be said that the error was harmless beyond a reasonable doubt. *State v. Watkins, supra; State v. Lenz*, 227 Neb. 692, 419 N.W.2d 670 (1988). Upon a full review of the record, I find that the exclusion of Dr. Radecki's testimony, although error, was nonetheless harmless beyond a reasonable doubt, and therefore no reversal is required.

In the defendant's offer of proof, Dr. Radecki stated that the defendant was desensitized to violence such that he did not appreciate the "great risk" of his behavior. However, the doctor also stated that "[o]bviously, he realized there was some danger. He told me just the day before [the fatal shooting] he had gotten angry at his roommate for doing the same thing with a neighbor." If the defendant appreciated that his conduct posed some risk to the life of Jason Cuellar, enough of a risk that just the day before he had yelled at his roommate for doing precisely the same act, subjectively disregarding the existence of that risk was an act sufficiently reckless to be covered by the definition of "recklessly" contained in § 28-109(19).

I would therefore affirm the conviction on the basis that the exclusion of Dr. Radecki's testimony constituted harmless error.

SHANAHAN, J., dissenting.

Both the majority opinion and the concurrence contain a misinterpretation of the statutory definition of *recklessly* as well as a misreading of *State v. Hoffman*, 227 Neb. 131, 416 N.W.2d 231 (1987), and incorrectly arrive at absolutes, rendering the majority opinion and concurrence absolutely incorrect concerning the nature and proof of reckless conduct as an element of third degree assault, the predicate unlawful act in Kistenmacher's conviction for manslaughter.

While the majority opinion correctly concludes that Kistenmacher's conviction is governed by principles enunciated in *Hoffman*, the majority actually disregards the *Hoffman* principles in disposing of this appeal. On the other hand, the

concurrence initially embraces the standard stated in *Hoffman*, but later disapproves language in the *Hoffman* standard and ultimately posits that there is no reversible error in excluding Kistenmacher's evidence offered regarding the "element of subjectivity" emphasized in the concurring opinion.

Both the majority and concurring opinions express the misperception that *Hoffman* negates a subjective element in the recklessness characterized in Neb. Rev. Stat. § 28-109(19) (Reissue 1985). The majority goes even further and holds that the test for recklessness is "purely objective."

Rather than repeating the *Hoffman* passage stated in both the majority and concurring opinions, one sees the clear meaning of *Hoffman* in the following excerpts which appear in immediate proximity to the *Hoffman* passage contained in the majority opinion and concurrence:

> According to the definition contained in § 28-109(19), *recklessly* . . . means conduct in which an actor disregards a substantial and unjustifiable risk of serious bodily injury to another, which risk, in view of the nature and purpose of the actor's conduct and circumstances known to the actor, involves a gross deviation from a standard of conduct which a law-abiding person would have observed in the actor's situation. . . .
>
> . . . .
>
> When an element of a crime involves existence of a defendant's mental process or other state of mind of an accused, such elements involve a question of fact and may be proved by circumstantial evidence. [Citation omitted.] Evidence established that Hoffman drank a considerable quantity of alcoholic beverage (root beer schnapps); drove his automobile on the city streets of Lincoln after consuming that alcohol; was conscious, alert, and conversing with hospital personnel after the fatal collision; and discussed the "Implied Consent Advisement Form" with Officer Bassett. *Those facts provided the trial court with sufficient circumstantial evidence from which to draw the conclusion that Hoffman was able to make a conscious choice to drive his automobile,* rather than refrain from operating his vehicle, *and thereby*

*disregarded the substantial risk of bodily injury to the public* . . . .

(Emphasis supplied.) *State v. Hoffman, supra* at 138, 140, 416 N.W.2d at 237-38. Therefore, to determine whether conduct is reckless, as characterized in § 28-109(19), the *Hoffman* court used a test which requires a finding that a defendant made a "conscious choice" to "disregard" a substantial risk of harm to another.

Only very rarely, however, will there be direct evidence that a defendant knew and appreciated the risk involved in the defendant's particular conduct alleged to be criminally reckless. "When an element of a crime involves existence of a defendant's mental process or other state of mind of an accused, such elements involve a question of fact and may be proved by circumstantial evidence." *State v. Hoffman, supra* at 140, 416 N.W.2d at 237. The *Hoffman* court recognized that a defendant's state of mind necessary for recklessness may be proved by (1) the defendant's acknowledged awareness and appreciation of the serious danger or risk resulting from the defendant's chosen course of conduct, or (2) the defendant's knowledge of attendant circumstances sufficient to justify a reasonable inference that the defendant actually realized the danger involved in the questioned conduct. In either case, the trier of fact is required to determine the defendant's state of mind at the time of the alleged reckless conduct. A factual finding that a reasonable person would have perceived the danger, but that the defendant, for some reason, failed to perceive the danger, would not support a finding of reckless conduct under *Hoffman*. While conduct contrary to or inconsistent with a reasonable person's conduct may constitute negligence, such conduct is not reckless as the term is defined in § 28-109(19).

Whether a defendant has recklessly acted is determined by the two-part test contained in § 28-109(19):

Recklessly shall mean acting with respect to a material element of an offense when any person disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and

purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

The preceding statute is, perhaps, more comprehensible if the statute's two sentences are treated as distinct components of a test for recklessness. First, the defendant must have realized that a risk existed, and must have "disregarded" that risk. Obviously, to "disregard" a risk, a person must be aware that the risk existed in the first instance. Consequently, appreciation of risk is the subjective element of recklessness. If the fact finder determines that the defendant appreciated the risk inherent in prospective conduct, and yet the defendant chose the conduct which resulted in the risk, then the "nature and degree" of the resultant risk must be evaluated, a process which relates to the second or objective part of the recklessness characterized by § 28-109(19). In this second component of the test, the fact finder must ask whether the risk was of such nature and degree that, when the defendant's appreciation of the risk is considered, disregarding the risk constituted a "gross deviation from the standard of conduct that a law-abiding person [a reasonable person] would observe in the actor's situation."

This two-part test to determine recklessness is by no means novel. The Model Penal Code § 2.02, comment 3 at 238 (1985), states:

Ultimately, then, the jury is asked to perform two distinct functions. First, it is to examine the risk and the factors that are relevant to how substantial it was and to the justifications for taking it. *In each instance, the question is asked from the point of view of the actor's perceptions, i.e., to what extent he was aware of risk, of factors relating to its substantiality and of factors relating to its unjustifiability.* Second, the jury is to make the culpability judgment in terms of whether the defendant's conscious disregard of the risk justifies condemnation. . . . [T]he question is whether the defendant's disregard of the risk involved a gross deviation from the standards of conduct that a law-abiding person would have observed in the actor's situation.

As noted in Treiman, *Recklessness and the Model Penal Code*, 9 Am. J. Crim. L. 281, 299-300 (1981):

Both recklessness and negligence require the existence or creation of a substantial and unjustifiable risk that circumstances exist or that a result will occur. In addition, the trier of fact must make an objective, after the fact, determination of the character of the risk. Further, there must be a gross deviation from the standard of behavior (conduct/care) of a fictional person (law-abiding/ reasonable).

The one crucial difference between recklessness and negligence is that recklessness has a subjective component. In this sense it is more like knowledge than negligence. With regard to negligence, the actor fails to perceive the risk. It is the failure to perceive the risk that is judged by an objective standard. With respect to recklessness there is subjective perception or awareness of the risk, but the actor consciously disregards the risk. It is this conscious disregard that is to be judged by the objective standard.

In jurisdictions which have a statutory definition of *recklessly* similar to the definition in § 28-109(19), none apply the "purely objective" test adopted by this court's majority but, quite to the contrary, recognize a subjective element in reckless conduct and utilize a test which requires that a defendant appreciate a risk in order to disregard the risk. See, *People v. Gates*, 140 A.D.2d 994, 529 N.Y.S.2d 663 (1988); *State v. Wilson*, 145 Wis. 2d 143, 426 N.W.2d 56 (1988); *State v. Koonce*, 731 S.W.2d 431 (Mo. App. 1987); *State v. Flewelling*, 524 A.2d 765 (Me. 1987); *State v. Malines*, 11 Conn. App. 425, 527 A.2d 1229 (1987); *State v. Allen*, 128 N.H. 390, 514 A.2d 1263 (1986); *Dalton v. State*, 488 So. 2d 13 (Ala. Crim. App. 1986); *Edgmon v. State*, 702 P.2d 643 (Alaska App. 1985); *Harmon v. State*, 260 Ark. 665, 543 S.W.2d 43 (1976).

By today's decision, the majority erroneously equates criminal recklessness, which requires "disregard" of a risk, with civil negligence, and thereby ignores the basic difference between negligent and reckless conduct—a negligent person fails to perceive a risk which should have been perceived, while a reckless person disregards a risk perceived by that person. In

prescribing the elements of third degree criminal assault reflected in Neb. Rev. Stat. § 28-310(1)(a) (Reissue 1985), the Legislature specified the three mental states required for a criminal assault: intent, knowledge, or recklessness. Under the definition of *recklessly* expressed in § 28-109(19), a negligent actor cannot be guilty of a third degree assault as a predicate for a manslaughter conviction. See Neb. Rev. Stat. § 28-305 (Reissue 1985). According to the majority, a person is reckless as the result of a failure to perceive a risk which a reasonable person would have perceived, but such conclusion by the majority disregards the explicit language of § 28-109(19) and *Hoffman*.

While this court may disagree on policy grounds with a definition of recklessness which requires the defendant's appreciation of a risk, the Legislature, nevertheless, has exercised its power to statutorily define crimes. "When the Legislature has spoken, it is not up to this court to disagree with its decision on a purely policy basis." *Arant v. G. H., Inc.*, 229 Neb. 729, 731, 428 N.W.2d 631, 632 (1988). To conform with Nebraska precedent, consistent with the better reasoned decisions of courts in other jurisdictions having a statutory definition of *recklessness* similar to the definition in § 28-109(19), I would hold that, to be guilty of violating a statute proscribing reckless conduct, the defendant must appreciate the substantial risk of injury inherent in a particular course of conduct, and then consciously embark on such conduct in disregard of that risk.

Turning to the evidential question in this appeal, in Kistenmacher's offer of proof, Dr. Radecki, a physician and psychiatrist qualified to give an opinion regarding Kistenmacher's mental state, testified that, at the time of the shooting, Kistenmacher was "desensitized to the great risk of that behavior [pointing a loaded gun at someone] and didn't realize the — by any means, the great dangers that he was taking." Dr. Radecki explained that "desensitization" is a state of mind in which an individual "markedly underestimate[s] the seriousness of violence as well as overestimating the dangers of society." According to Dr. Radecki, Kistenmacher "realized there was some danger." Hence, the concurrence concludes

that, although exclusion of the offered testimony was error, the exclusion was harmless beyond a reasonable doubt, apparently because the physician's opinion was somewhat equivocal.

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Evid. R. 401 (Neb. Rev. Stat. § 27-401 (Reissue 1985)). See, also, *State v. Robertson*, 219 Neb. 782, 789, 366 N.W.2d 429, 434 (1985) ("Only relevant evidence is admissible, and evidence which is not relevant is not admissible"); *State v. Oliva*, 228 Neb. 185, 188, 422 N.W.2d 53, 55 (1988) ("[E]vidence is probative [and therefore relevant] if it tends in any degree to alter the probability of a material fact"). Kistenmacher's appreciation of the risk in his chosen course of conduct, pointing the gun at another, was, as noted above, a "fact . . . of consequence to the determination of the action . . . ." Whether we, as judges, believe or disbelieve the opinion expressed by Dr. Radecki, his opinion rendered the existence of Kistenmacher's appreciation of the risk less likely and was, therefore, relevant. See *State v. Williams*, 224 Neb. 114, 396 N.W.2d 114 (1986) (credibility of witnesses and weight to be given testimony are matters for the jury). Kistenmacher's offer of proof contained evidence which, if believed, tended to negate an element of the crime charged, namely, Kistenmacher's disregard of a substantial risk.

"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ." Neb. Evid. R. 103(1) (Neb. Rev. Stat. § 27-103(1) (Reissue 1985)). However, I am unable to characterize the error in excluding Dr. Radecki's testimony as error which is harmless beyond a reasonable doubt. In the trial of a criminal case, whether an error in admitting or excluding evidence reaches a constitutional dimension or not, an erroneous evidential ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Watkins*, 227 Neb. 677, 419 N.W.2d 660 (1988); *State v. Lenz*, 227 Neb. 692, 419 N.W.2d 670 (1988). If there is some incorrect conduct in a jury trial which, on a review of the entire record, did not materially

influence the jury in its verdict adverse to a substantial right of the appellant, the error is harmless. *State v. Watkins, supra.*

Dr. Radecki's offered opinion was the only evidence regarding Kistenmacher's state of mind at the time of the shooting. Furthermore, Dr. Radecki's opinion had direct bearing on Kistenmacher's guilt, inasmuch as a third degree assault by reckless conduct was the predicate "unlawful act" required for Kistenmacher's manslaughter conviction.

In the present case, the substantial right violated was Kistenmacher's right to present Dr. Radecki's testimony which tended to establish Kistenmacher's innocence. See, *Washington v. Texas*, 388 U.S. 14, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *Crane v. Kentucky*, 476 U.S. 683, 690-91, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986) ("exclusion of . . . exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case encounter and 'survive the crucible of meaningful adversarial testing' ").

Therefore, I would reverse Kistenmacher's conviction and remand the cause for a new trial, allowing Kistenmacher to present testimony regarding his appreciation of the substantial risk inherent in his chosen course of conduct, the subjective element required for criminally reckless conduct.