STATE OF NEBRASKA, APPELLEE, V. RONALD N. FORT, APPELLANT.

510 N.W.2d 458

Filed June 29, 1993.  No. A-92-545.

Thomas M. Kenney, Douglas County Public Defender, and Kelly S. Breen for appellant.

Don Stenberg, Attorney General, and Donald A. Kohtz for appellee.

CONNOLLY, HANNON, and MILLER-LERMAN, Judges.

CONNOLLY, Judge.

This appeal arises from the conviction and sentence of the appellant, Ronald N. Fort, for manslaughter. Fort asserts that the State failed to prove beyond a reasonable doubt that he did not kill the victim, Baron Smith, in self-defense. Thus, he argues that the trial court erred in denying his motion for a directed verdict at the close of the State's case. We affirm.

## I. FACTS

At approximately 3:30 a.m. on August 19, 1991, Fort drove a brown rental car to the vicinity of 24th and Lake Streets in Omaha and approached a group of people that included Smith. According to one of the witnesses at trial, 24th and Lake was an area notorious for drug sales. Earlier that morning, at approximately 12:45 a.m., Fort had attempted to buy crack cocaine at a residence at 31st and Ames Streets, but the deal had fallen through. Fort communicated to the group that he was looking for a " 'tall, dark' " man that turned out to be Smith. Approximately 1 week earlier, Smith had commenced selling crack cocaine in order to raise bond money for a friend.

Witnesses to the encounter testified that Fort and Smith seemed to recognize each other. The witnesses said Smith got into Fort's car and the two men drove away, presumably to execute a sale of crack cocaine. Smith had in his possession a quarter ounce of crack cocaine worth approximately $800 to $1,200. The witnesses who had seen Smith leave 24th and Lake in the car with Fort testified that Smith was unarmed when he got into Fort's car. They said that Smith had $800 cash in his pocket and was wearing several necklaces and gold rings, an imitation Rolex watch, and a baseball cap adorned with pink rhinestones.

The next stage in the factual narrative is the crux of this appeal. There is no question that Fort killed Smith sometime

between 3:30 and 6:30 a.m. The State argues that Fort may have initially intended to purchase crack cocaine from Smith, but decided to rob Smith of the latter's drugs, cash, and personal possessions, and then killed the victim in the course of that robbery. Fort argues that Smith wanted to buy drugs from him and that Smith tried to rob Fort of his cash. Fort says that Smith produced a gun, a struggle ensued, and though shot through the arm by Smith, he managed to wrest the gun from Smith and shoot him in self-defense. Critical to Fort's defense is the testimony of his sister, which we will consider in detail in the analysis section below.

Smith's lifeless body was discovered at approximately 6:25 a.m. in a parking lot about three blocks from 24th and Lake Streets. There were tire tracks across a strip of grass between the street and the parking lot. The driver of the car had missed the driveway on entry to and exit from the parking lot. Scuff marks left by tire tracks on the pavement of the parking lot ran in close proximity to where Smith's body was dumped, and the scuff marks on the pavement lined up with the tire tracks in the grass. The measurement of the distance between the tire tracks was consistent with the distance between the tires of the car driven by Fort. There were traces of blood found in the interior of the car.

A bloody palm print made by Fort was found on Smith's pants just below the pockets. The pockets of Smith's pants had been pulled inside out. There was neither cash nor crack cocaine on or near Smith's body. The gold rings and watch also were gone.

Dr. Blaine Roffman, a pathologist, testified that Smith had been shot twice, once in the chest just below the left nipple and once in the back just below the left shoulder blade. Dr. Roffman could not determine which wound had been inflicted first. The bullet fired into Smith's back did not enter the body cavity and would not have been fatal. The bullet fired into Smith's chest penetrated his heart and left lung. According to Dr. Roffman, Smith would have died within 5 or 6 minutes of receiving the shot to the heart and lung. Both bullets were recovered from Smith's body. A firearms expert from the Omaha Police Division testified that the bullets most likely were fired from the

same weapon. The weapon was never found.

Fort was at his sister's residence in Lincoln when he was taken into custody by the Lincoln Police Department on the afternoon of August 20. Fort had an obvious gunshot wound in his right forearm, but refused medical treatment. An Omaha police officer had to obtain a court order to have x rays taken of Fort's arm. Dr. Roffman testified that Fort had suffered a "contact" or "near-contact" wound, that is, a gunshot wound inflicted with the barrel of the gun in contact with the skin or less than an inch away from the skin. The bullet entered Fort's upper forearm and exited the forearm near the crease of the elbow without striking bone.

The record indicates that none of the windows of Fort's car were broken and that there were no bullet holes in the interior of the car. Apparently, the bullet that passed through Fort's arm was not recovered from the interior of the car. Dr. Roffman testified that it was possible that the bullet that had passed through Fort's arm was the same bullet that had entered Smith's back.

Fort was charged with first degree murder, a Class I felony under Neb. Rev. Stat. § 28-303(1) (Reissue 1989), and use of a firearm to commit a felony, a Class III felony under Neb. Rev. Stat. § 28-1205(1) (Reissue 1989). In connection with both of those charges, Fort also was charged with being a habitual criminal under Neb. Rev. Stat. § 29-2221 (Reissue 1989). After the State rested at trial, Fort moved for a directed verdict. The motion was denied. Fort rested without presenting any evidence. The jury found Fort guilty of manslaughter. Fort was sentenced to a prison term of 20 to 60 years, to be served consecutively to any previously imposed sentences.

## II. ASSIGNMENT OF ERROR

Fort argues that the trial court erred in denying his motion for a directed verdict because the State had failed to prove beyond a reasonable doubt that Fort had not acted in self-defense when he shot Smith.

## III. STANDARD OF REVIEW

Procedurally, this case is virtually identical to *State v. Schumacher*, 240 Neb. 184, 480 N.W.2d 716 (1992). In

*Schumacher*, at the close of the State's case, the defendant moved for a directed verdict on all five counts against him. The motions were denied. The defendant then rested without presenting any evidence. The jury found him guilty on all five counts. The defendant appealed the trial court's denial of his motions for directed verdicts. This court now applies to Fort's appeal the same standard of review applied in *Schumacher*, which we set out immediately below.

In a criminal case a court can direct a verdict only when (1) there is a complete failure of evidence to establish an essential element of the crime charged, or (2) evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *Id*.

In determining whether evidence is sufficient to sustain a conviction in a jury trial, an appellate court does not resolve conflicts of evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence presented to a jury, which are within a jury's province for disposition. A verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that verdict. *Id*.

On a claim of insufficiency of evidence, an appellate court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may an appellate court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt. *Id*.

## IV. ANALYSIS

The State had to prove beyond a reasonable doubt that Fort did not act in self-defense when he shot Smith. See *State v. Archbold*, 178 Neb. 433, 133 N.W.2d 601 (1965) (such proof is an essential element of the crime of manslaughter). Thus, if there was a complete failure by the State to adduce evidence disproving Fort's hypothesis of self-defense or if the evidence adduced by the State was so doubtful in character and lacking in probative value that it could not sustain a finding of guilt, then the trial court should have granted Fort's motion for a directed verdict.

In the facts section above, we have discussed the abundance of evidence offered by the State in support of its theory that Fort killed Smith in the course of a drug transaction that turned into a robbery. Fort's claim to have shot Smith in self-defense was based on the testimony of his sister, Joyce Jackson, who was called as a witness by the State. Jackson testified to a conversation she had with Fort at 6 p.m. on August 19, approximately 12 hours after Smith's body was found. Jackson testified that Fort had told her that Smith had wanted to buy drugs from him, but that

> they got to arguing and [Smith] asked Ronny how much money Ronny had, and Ronny pulled it out and started counting it, and [Smith] tried to snatch Ronnie's [sic] money. Then Ronnie [sic] took it back, took his money back, and [Smith] pulled out a gun and put it to Ronnie's [sic] head. And they got to struggling, and the gun went off and it hit Ronny in one of his arms, and Ronny took the gun from [Smith].

According to Jackson, Fort told her that while the struggle continued and the car zigzagged down the street, Fort wrestled the gun away from Smith, shot him, and dumped the body in the parking lot where it was later found.

Jackson's testimony about Fort pulling out his money and counting it suggests that Fort, not Smith, was the buyer in the proposed drug transaction. Even ignoring that incongruity, Fort's account of the shooting as retold in Jackson's testimony is problematic. Fort told Jackson that Smith drew a gun and fired at him. Fort blocked or deflected the shot with his right forearm, the bullet passing completely through the forearm. If Smith did produce the gun and fire the first shot in the struggle, then neither of the two bullets recovered from Smith's body could have been the same bullet that passed through Fort's arm. However, a third bullet was never found. As the State pointed out in its closing argument, the bullet that Smith allegedly shot through Fort's arm was not recovered from the car, and the record indicates that the car in which the struggle took place did not have any broken windows or bullet holes in the interior. In closing argument, defense counsel speculated that the bullet that passed through Fort's arm must have flown out of the car

through Fort's driver's-side window, which must have been rolled down. That supposition is perhaps plausible, but the remainder of Fort's version of the shooting is not. The record indicates that Fort is left-handed. Jackson testified that Fort told her that he continued driving the car after being shot in the right forearm. While the car zigzagged down the street, Fort, a natural left-hander with his left hand controlling the steering wheel, used his right hand, despite the bullet hole through his right forearm, to wrestle the gun away from Smith and then shoot him twice. We find this version of the shooting untenable.

The significance of Jackson's testimony was the admission by Fort that he had killed Smith. Jackson's recounting of her brother's self-serving version of the shooting was of little if any probative value on the issue of self-defense.

In the consideration of a defendant's motion for a directed verdict, the State is entitled to have all its relevant evidence accepted or treated as true, every controverted fact favorably resolved for the State, and every beneficial inference reasonably deducible from the evidence. *State v. Hernandez*, 242 Neb. 78, 493 N.W.2d 181 (1992). Upon review of the record, we find that Jackson's testimony did not undermine the State's case in the manner suggested by Fort. Viewing all reasonable inferences from the evidence in favor of the State, we find that the State adduced evidence sufficient to allow the jury to find beyond a reasonable doubt that Fort did not kill Smith in self-defense. Therefore, we affirm the judgment of the trial court in denying Fort's motion for a directed verdict.

AFFIRMED.